JAMES BLEVINS, Plaintiff-Appellant and Cross-Appellee, v. INLAND STEEL COMPANY, Defendant-Appellee and Cross-Appellant.

First District (4th Division)   No. 1—88—0175

Opinion filed February 23, 1989.—Rehearing denied April 11, 1989.

Leonard M. Ring & Associates, P.C., of Chicago (Leonard M. Ring and William J. Jovan, of counsel), for appellant.

David C. Burtker, of Chicago, for appellee.

JUSTICE LINN delivered the opinion of the court:

Plaintiff, James Blevins, brought an action for damages against Inland Steel Company for injuries he sustained on Inland Steel's prop-

erty when he stepped into a large pothole. After trial, the jury returned a verdict in his favor for $15,555, specifically finding that Blevins was not negligent with respect to his injury. He appeals on the ground that the jury's verdict was manifestly inadequate in that it was for a lesser sum than that established by his medical expenses and lost wages. Inland Steel cross-appeals, arguing that its motion for directed verdict should have been granted because Blevins failed to present a *prima facie* case of liability.

We reverse in part and remand for a new trial on damages.

BACKGROUND

On November 15, 1980, Blevins was working the 4 p.m. to midnight shift at the Harbor Works Plant in East Chicago, Indiana. The plant is owned, operated, and maintained by Inland Steel. Blevins was an ironworker employed by Furnco Construction Company, which was hired as an independent contractor to perform repairs at the plant. Inland Steel had designated a parking lot to be used by the Furnco employees, and it was in this designated lot that Blevins was injured. Blevins knew that the parking lot contained many potholes because he had navigated them during the several days that he had been working on the job.

A company bus transported the employees from the parking lot to the jobsite and returned them to the lot after their shifts. On the night of November 15, 1980, Blevins boarded the bus at the jobsite, at approximately midnight, and was returned to the parking lot. When the bus stopped, Blevins went down the steps and stepped off the bus into a hole that was at least three feet wide and six inches deep. It was wider than the bus door.

When he stepped into the hole with his left foot, he twisted his knee and heard something pop. He felt pain but went home. His knee swelled during the night, and he went to an emergency room, where he was X-rayed and given a brace to wear. The following morning he attempted to work but could not. He consulted an orthopedic surgeon, who aspirated the knee and drew out bloody fluid, which indicated that something in the knee was torn.

On November 19, 1980, Blevins underwent surgery. The knee joint was opened up and repairs were made to his ruptured anterior cruciate ligament and the medial collateral ligament. For seven weeks thereafter Blevins wore a long leg cast, which was then converted to a knee-hinge cast. After 9 or 10 weeks with the hinged cast, Blevins received a knee brace with a hinge to replace the cast.

Approximately two months after his injury, Blevins could not

straighten or bend his knee. He took 36 physical therapy treatments over a 2½-month period, after which he continued therapy at home for a year and one half.

According to the surgeon's trial testimony, Blevins sustained permanent damage, a residual instability and traumatic degenerative joint disease. Blevins was taking pain medication and continued to wear a brace for one year after the occurrence. He also experienced swelling of his knee, which resulted in a second aspiration.

For a six-to-eight-month convalescent period, Blevins was unable to work, run, jump, or climb a ladder. On July 1, 1981, he returned to light duty work. Blevins testified at trial that his knee was numb and that he was unable to engage in the same activities with his children as he had before his injury.

On the issue of damages, Blevins produced evidence of medical expenses totalling $4,886.50. He was a 35-year-old man who had been an ironworker for 15 years. Because of the injury, Blevins was unable to work for eight months. The hourly rate for an ironworker was $16.67 per hour. The calculation of damages for the 32 weeks, at 40 hours per week, was $21,337. Blevins testified that he had had jobs in which he worked 12 hours a day, 7 days per week, including holidays. Overtime would be charged at time-and-a-half on Saturdays, and double time on Sundays and holidays. However, Furnco's job at the Inland Steel plant was completed the day after Blevins' injury.

Defendant presented one witness, an electrical maintenance foreman for Inland Steel. He testified as to the number of lights in the parking lot, six light poles with two sodium vapor lights each. He had no personal knowledge, however, as to how much light was available on the night in question.

The jurors deliberated for several hours before returning a verdict in favor of Blevins in the amount of $15,550. In response to a special interrogatory, they found that Blevins did not negligently contribute to his injuries.

OPINION

Blevins contends that the jury's award was palpably inadequate because it bears no reasonable relationship to the proofs. His major elements of damage were medical expenses ($4,886.50), lost wages ($21,337.00), and pain and suffering, including the permanent effects of the injury. The medical expenses and lost wages alone total $26,223.50.

In support of his position, Blevins cites numerous authorities which reversed jury's awards as inadequate. *E.g., Hollis v. R. Lato-*

*ria Construction, Inc.* (1985), 108 Ill. 2d 401, 485 N.E.2d 4 ($30,000 inadequate where lost wages totalled $24,000 and remaining $6,000 was insufficient to compensate for permanent disability, pain and suffering, and loss of future wages); *Giardino v. Fierke* (1987), 160 Ill. App. 3d 648, 513 N.E.2d 1168 ($4,200 award inadequate where uncontroverted medical expenses totalled $4,308.17 and court found that jury could not have considered all elements of damage); *Gall v. Metropolitan Sanitary District* (1982), 109 Ill. App. 3d 502, 440 N.E.2d 973 ($25,000 award inadequate where uncontested medical expenses were $11,577 and lost wages were $8,602, because this left only $5,000 for pain and suffering and permanent disability); see also *First National Bank v. Szwankowski* (1969), 109 Ill. App. 2d 268, 275-76, 248 N.E.2d 517, 521 ("We are unable to imagine the misadventure the issue of damages suffered during the deliberations of the jury. The verdict does not even satisfy the uncontradicted elements of damages relating to medical expenses and lost wages").

■ Inland Steel does not directly challenge these cases, but instead views the verdict as reflecting a compromise on the issue of liability and damages. A compromise verdict would preclude a retrial limited to the issue of damages. (*Kelty v. Wiseman Construction Co.* (1976), 38 Ill. App. 3d 808, 813, 349 N.E.2d 108, 111.) Inland Steel suggests that if the jurors were not truly convinced that Blevins was free of contributory negligence, or if they believed that he had not proved his damages adequately, they may have awarded him a lesser amount because of their doubts.

To bolster its position, Inland Steel argues that Blevins knew of the condition of the parking lot and that there was evidence that the lot was lit well enough so that he could have seen the pothole before stepping off the bus. Blevins' possible contributory negligence was therefore in issue. Regarding damages, Inland Steel claims that on cross-examination it established that ironworking was seasonable and irregular. Accordingly, Inland Steel concludes that the jury compromised its verdict.

■ We disagree. The jury answered "no" to the special interrogatory regarding Blevins' contributory negligence. Whatever questions it had during deliberations regarding the effect of such a finding, we are bound by its final determination as manifested in its answer to the interrogatory. We cannot presume it was the result of a compromise decision. Accordingly, the jury resolved the liability issue against Inland Steel, the party responsible for the maintenance and operation of the parking lot. We do not find the verdict to be against the manifest weight of the evidence, nor do we find sufficient indicia of a com-

promise on the liability issue.

■ The sufficiency of Blevins' evidence of damages is a matter separate from liability. The medical expenses do not appear to be contested, nor were they challenged at trial. Likewise, Inland Steel does not argue that Blevins did not sustain pain and suffering or permanent impairment of his knee joint. Instead, Inland Steel focuses on the lost wages element, arguing that Blevins failed to sustain his burden on this element and that the jury might have compromised because of the speculative nature of the evidence.

Again, we disagree with Inland Steel. Blevins did offer a reasonable basis for calculating his lost wages, using a 40-hour work week and excluding any overtime. While Inland Steel suggests that Blevins' work was seasonal and sporadic, it offered no evidence that Blevins could not have found steady work during the months of his convalescence. In fact, Blevins testified that he was able to get work from sources other than the union hall and that the economy of northwest Indiana during the time in question was "very good," a factor favoring the availability of ironworking jobs. Moreover, he had been an ironworker for 15 years and had resumed working after his convalescence. Inland Steel offered the jury no competent evidence to rebut Blevins' calculation; hence, the jury was not free to disregard their instruction to consider all elements of damages. We find that the award of damages does not comport with the largely uncontradicted evidence. We further find that the verdict of liability is supported by the evidence and that the issue of damages is separable and distinct for liability. Accordingly, we hold that Blevins is entitled to a new trial limited to damages.

■ A second issue Inland Steel raises concerns Blevins' alleged reversible error in suggesting to the jury that if the jury answered the interrogatory in the affirmative, "Mr. Blevins will lose this case of the—." Inland Steel promptly objected. According to Inland Steel, Blevins' attorney by this statement improperly suggested to the jury that they must harmonize their answer to the special interrogatory with their general verdict. Any resulting reduction in the amount awarded, therefore, would be attributable to the jury's decision that Blevins was really partly to blame, but if they so found, he would be unable to recover any amount.

It is true that the jury submitted questions to the court during deliberations asking whether they would be required to return a verdict for defendant if they found that plaintiff contributed to his injury to any degree. The court responded by telling them to follow their instructions. We do not agree, however, that the remark of Blevins' at-

torney tainted the jurors' deliberations or that they otherwise might have found for Inland Steel. The real question is whether the attorney's remark amounted to telling the jury to conform their answer to the special interrogatory with the general verdict. If so, the purpose of the special interrogatory would be defeated. Telling the jury to conform their answer to their verdict and revealing that the defendant submitted the special interrogatory has been held to be reversible error because it allows the jury to protect their verdict without regard to the evidence. *Sommese v. Maling Brothers, Inc.* (1966), 36 Ill. 2d 263, 222 N.E.2d 468.

■ In contrast to the comments in *Sommese,* the remark in issue is similar to those that have been held not to constitute reversible error. In *Burns v. Howell Tractor & Equipment Co.* (1977), 45 Ill. App. 3d 838, 848, 360 N.E.2d 377, 385, the court held that counsel stopped short of impermissible argument by refraining from telling the jury the legal significance of conforming their answer to their verdict. The plaintiff's counsel in that case told the jury, "[Y]ou have to answer that Interrogatory 'No' ***. It is very, very important that you [do so]. *** But if you answer that Interrogatory any way than 'No,' then you are saying, 'It is his fault and he can't recover.' "

In *Moore v. Checker Taxi Co.* (1971), 133 Ill. App. 2d 588, 592, 273 N.E.2d 514, 517, the plaintiff's attorney argued to the jury, "If you believe he was not guilty of negligence that caused this accident, you should answer 'No' to that inquiry, because if Allen Moore was guilty of negligence, then he can't recover and they are right." The court held that this was not error because the attorney refrained from telling the jury to harmonize their answer with the general verdict. The court noted that attorneys have the right to argue the evidence and to tell the jury how the interrogatory should be answered.

In the pending case, plaintiff's attorney's comment, like those in *Burns* and *Moore,* suggested to the jury that the plaintiff would not recover if they answered the interrogatory in the affirmative. While the distinction may seem slight, the cases do hold that such comment is not error, whereas if the attorney takes the next step and instructs them to harmonize the interrogatory answer with the general verdict, reversible error may result. In any event, the jury necessarily considers the effect of the plaintiff's conduct in reaching their verdict. Here, they were not told to harmonize their special finding and general verdict. Therefore, we follow *Burns* and *Moore* in holding that Blevins' attorney's remark did not constitute reversible error.

CROSS-APPEAL

Inland Steel cross-appeals on the liability issue, contending that the trial court should have granted its motion for directed verdict at the close of Blevins' case. This argument is premised on Inland Steel's belief that it had no duty or breached no duty to provide adequate lighting at night in the parking lot because Blevins was an invitee who knew of the condition of the parking lot and the inadequacy of the lighting. Apparently, Inland Steel views the conditions as open and obvious, such that Blevins cannot recover, particularly because he failed to prove that Inland Steel had notice of the conditions of its lot.

We do not believe that Inland Steel's duty was limited to providing light. As the jury was instructed without objection, Inland Steel had the duty to use ordinary care to maintain its property in a reasonably safe condition for the use of invitees. The sufficiency of the lighting was in dispute. However, it is undisputed that Inland Steel owned the lot and was responsible to maintain it. Blevins had no control over the conditions; he simply worked as an employee of an independent contractor. Inland Steel designated the parking lot for his use. The record also reveals that Inland Steel maintained a security force that could have reported any problems with the lots.

Certainly, as landowner and operator of the lot, Inland Steel was charged with notice of long-term or recurring conditions of the lot that it directed business invitees to use. Large numbers of potholes generally do not spring up overnight. Inland Steel did nothing to rebut the inference that it knew, actually or constructively, of the poor conditions in the parking lot. To hold that Blevins had a duty to report the conditions of the lot is to circumvent the responsible party's duty to make routine repairs and adhere to ordinary care in allowing people to use the lot.

Inland Steel did not deny the existence of the numerous potholes. Moreover, it did not seriously contradict Blevins' evidence of the lighting conditions, since the one witness who testified had no personal knowledge of whether or not the lights were operable on the night of the incident. Blevins and another witness testified that the lot was dark. There was no lighting on the steps of the bus, which parked right by a large pothole.

We conclude that Inland Steel's motion for directed verdict was properly denied. Its case in chief added no new evidence, except for the verification that the parking lot did have lighting fixtures.

For the foregoing reasons, we affirm the judgment on the jury's verdict on the liability issue and the denial of the motion for directed verdict. We reverse the award of damages as not conforming to the

evidence and being palpably inadequate. Accordingly, this cause is remanded to the trial court for a new trial on the issues related to damages only.

Affirmed in part; reversed in part and remanded.

JIGANTI, P.J., and JOHNSON, J., concur.