MARY J. BAILEY, f/k/a Mary J. Hammons, Plaintiff-Appellant, v. GREGORY T. WILSON, Defendant-Appellee.

Fourth District   No. 4—98—0031

Argued July 22, 1998.—Opinion filed September 28, 1998.

298

Gregory G. Lietz (argued), of Hutton, Laury, Hesser, Lietz & Wilcox, of Danville, for appellant.

David J. Ryan (argued), of Dukes, Martin, Ryan & Meyer, Ltd., of Danville, for appellee.

JUSTICE KNECHT delivered the opinion of the court:
The parties were involved in a two-car collision in Danville, Il-

linois. Plaintiff filed a negligence lawsuit against defendant for personal injuries to her head, neck, and back. After a trial, the jury returned a verdict in defendant's favor. Plaintiff appeals, arguing the verdict was contrary to the manifest weight of the evidence and the court erred in admitting evidence of a prior automobile accident involving plaintiff. We disagree and affirm.

### ` I. BACKGROUND

The automobile accident occurred in January 1995, as defendant was driving north on Vermilion Street, a four-lane road in Danville, Illinois. When he approached the intersection at Williams Street the traffic light was green. He slowed his automobile, pulled into the left turn lane, and prepared to turn onto Williams Street. He checked traffic and noticed another vehicle (not plaintiff's automobile) facing the opposite direction and waiting in the left turn lane.

As he proceeded to turn left through the intersection, his automobile struck plaintiff's vehicle, which was traveling south on Vermilion Street. His right front quarter panel collided with plaintiff's front bumper.

Prior to trial, the court denied plaintiff's motion *in limine,* which sought to preclude defendant from introducing evidence of a January 1993 automobile accident involving plaintiff. Dr. Raj Rajeswaren treated plaintiff after the 1993 accident. According to Dr. Rajeswaren's evidence deposition, the 1993 accident resulted in injuries to plaintiff's neck. He diagnosed her with post-concussion syndrome, acute cervical strain, and left brachial plexopathy. Dr. Rajeswaren also prescribed physical therapy and anticipated full recovery in four to six weeks. After her last examination in March 1993, plaintiff had full and pain-free range of motion.

At the August 1997 trial, plaintiff testified she was traveling south on Vermilion Street going approximately 30 miles per hour, which was the posted speed limit. The traffic light at the intersection of Williams Street was green. Defendant's automobile was facing the opposite direction in the left turn lane across Williams Street. When she was about three car lengths from the intersection, defendant hesitated before making his turn and she took her foot off the accelerator. Defendant then turned in front of her, causing her to brake and veer to the left. She did not sound her horn before colliding with defendant's vehicle. The impact threw her forward, causing her head to hit the window.

Defendant described the collision as a solid bump. After the collision, he got out of his automobile and twice asked plaintiff if she wanted an ambulance. She refused both times. A third party who

witnessed the accident also asked if she wanted an ambulance and she again refused. However, plaintiff was pregnant at the time of the accident so defendant convinced her to take an ambulance to the hospital. Plaintiff was taken to the emergency room at United Samaritans Medical Center.

Plaintiff testified she told the emergency room personnel her neck was sore and she was having sharp, knife-like pains in her back. However, in his evidence deposition, Dr. Philip Barnell, the doctor who initially treated plaintiff, stated she denied chest, neck, shoulder, and back pain. Nevertheless, Dr. Barnell ordered a cervical spine X ray and the results were normal. Based on plaintiff's statements and the diagnostic tests, he concluded plaintiff was not injured except for abdominal tenderness and fetal demise occurring before the accident. Plaintiff did not seek recovery for the death of her unborn child.

Also testifying via an evidence deposition, Dr. Kevin Kirby, plaintiff's physician, stated plaintiff did not complain of lower back pain in the emergency room, but did complain of neck pain. Dr. Kirby testified plaintiff had spasms and tenderness in her neck; however, the cervical X ray did not show any fractures and there was no significant tissue swelling. He stated an acute fracture from the accident would have caused plaintiff significant pain on examination.

After being released from the hospital, plaintiff remained in bed for two days. She stated she could hardly move her neck, her head ached, her lower back was sore, and she could not move without pain. She was uncertain whether she told Dr. Kirby about the sharp pain in her lower back; however, he did not recall any complaints regarding her lower back.

Plaintiff continued to see Dr. Kirby for her injuries and fetal demise through March 1995. During their last appointment, Dr. Kirby told plaintiff to expect slow improvement over the next six to eight weeks and to check back if she had further problems. Plaintiff never returned to see Dr. Kirby.

Shortly after her last visit with Dr. Kirby, plaintiff began treatment with Dr. Sreemannarayana Prathipati, a rehabilitation doctor. In his evidence deposition, Dr. Prathipati stated plaintiff complained of neck and shoulder pain, a choking sensation in her throat, lower back pain radiating through her legs, tingling in her right arm, and a sensation in her hands and lower extremities as if they were asleep. His examination revealed weakness in both hands, a limited range of motion in her neck, and tenderness in her neck, back, and lumbar areas.

An electromyogram test (EMG) revealed nerve root irritation in her cervical levels C5, C6, and C7 (neck area). Further, X rays revealed a chip fracture at L3 and a compression fracture at T12-L1

(lower back area). Dr. Prathipati could not tell how old those fractures were, other than to say they were more than six weeks old. He stated plaintiff's fractures would have caused immediate pain. Dr. Prathipati ordered an magnetic resonance imaging test (MRI) of plaintiff's cervical and lumbar spine, which may reveal a nerve injury if there is sufficient swelling. Plaintiff's MRI did not uncover any injuries.

Plaintiff testified she told Dr. Prathipati about the January 1993 automobile accident during her first visit with him; however, Dr. Prathipati denied knowing about that accident. The only accident he was aware of was the January 1995 accident.

Based on this history, he concluded her fractures were the result of the 1995 accident. Dr. Prathipati stated he wanted to know about plaintiff's complete history before diagnosing the cause of her injury. However, he relied solely on plaintiff's account of the 1995 accident in reaching his conclusion.

In April 1995, Dr. Prathipati referred plaintiff to Dr. Rajeswaren. Dr. Rajeswaren, again testifying via an evidence deposition, stated plaintiff complained of stabbing pain at the base of her neck, tightness in the sides of her neck, numbness and tingling in her hands, lower back pain, and headaches. After conducting a physical examination, Dr. Rajeswaren diagnosed her with cervical and lumbar strain and recurrent headaches. He did not find clinical evidence of a pinched nerve or spinal cord injury. He asked plaintiff to return after Dr. Prathipati received the results from her MRI; however, she never returned.

In April 1996, Dr. Prathipati referred plaintiff to Dr. Richard Rak, a neurological surgeon. In his evidence deposition, Dr. Rak testified plaintiff complained of lower back pain, neck pain, muscle spasms in her shoulder, and mild neck stiffness. She provided Dr. Rak with details of the January 1995 accident. However, she did not tell Dr. Rak about the January 1993 accident. Dr. Rak stated an inaccurate patient history would affect his opinion as to the cause of plaintiff's symptoms.

Upon examining plaintiff, Dr. Rak did not observe any spasms, but the EMG revealed something wrong with plaintiff's nerve roots on the left side of her neck. The MRI did not reveal any evidence of a herniated disc, abnormality in the spinal cord, or nerve root compression. He also checked for muscle atrophy and found none. He administered a strength test and found no definite muscle weakness. Dr. Rak concluded that plaintiff was purposely refraining from using her full strength. He diagnosed plaintiff with permanent nerve root irritation in the neck and stated nerve root irritation is most commonly caused by disc herniation or, less commonly, when a nerve root is stretched.

After the parties testified and the evidence depositions were read

to the jury, the court instructed the jury on negligence in accordance with Illinois Pattern Jury Instructions, Civil, No. B21.02 (3d ed. 1995), which states plaintiff bears the burden of proving (1) defendant was negligent, (2) plaintiff was injured, and (3) defendant's negligence was the proximate cause of plaintiff's injuries. The jury was also instructed defendant was not liable if he proved plaintiff's comparative negligence was more than 50% the proximate cause of her injury. See Illinois Pattern Jury Instructions, Civil, No. B21.02 (3d ed. 1995).

On August 20, 1997, the jury returned a verdict in defendant's favor. On September 19, 1997, plaintiff filed a motion for a new trial or judgment notwithstanding the verdict (*n.o.v.*), arguing the jury's verdict was contrary to the manifest weight of the evidence. On September 23, 1997, without leave of the court, plaintiff filed an amendment to the motion, which for the first time raised her contention the court erred in allowing evidence detailing the January 1993 accident and injury.

In October 1997, plaintiff sought leave to file the amended posttrial motion. In December 1997, the court denied plaintiff's (1) original posttrial motion, (2) amended posttrial motion, and (3) motion to file an amended posttrial motion. The court determined it lacked jurisdiction to hear the amended motion because it was filed more than 30 days after the entry of judgment without the court's permission. This appeal followed.

## II. ANALYSIS

On appeal, plaintiff raises three contentions: (1) her amended posttrial motion preserved her right to appeal the court's decision admitting evidence of her January 1993 automobile accident; (2) the court erred in allowing said evidence to be admitted (*Brown v. Baker*, 284 Ill. App. 3d 401, 404-05, 672 N.E.2d 69, 71 (1996)); and (3) the jury's verdict was contrary to the manifest weight of the evidence (*Timm v. Indian Springs Recreation Ass'n*, 226 Ill. App. 3d 760, 764, 589 N.E.2d 988, 991 (1992)). We find her arguments unpersuasive and affirm the trial court's judgment.

### A. The 1993 Automobile Accident

Initially, we note defendant contends plaintiff failed to preserve her right to appeal the trial court's decision admitting evidence of the 1993 automobile accident. Defendant alleges the issue is forfeited because plaintiff's amended posttrial motion, which raised the issue for the first time, was filed beyond the 30 days allowed by statute without the court's permission. See 735 ILCS 5/2—1202(c) (West 1996). However, because we conclude the evidence was properly admitted, we need not address these procedural arguments.

■ Generally, in personal injury actions, evidence of plaintiff's prior injury is admissible when there is either (1) a causal connection between the current injury and the prior injury, or (2) both injuries involve the same area of the body. See *Molitor v. Jaimeyfield*, 251 Ill. App. 3d 725, 728, 622 N.E.2d 1250, 1252 (1993) (Second District); *Wilson v. Granite City Steel Division of National Steel Corp.*, 226 Ill. App. 3d 96, 109-10, 589 N.E.2d 660, 668 (1992) (Fifth District); *Elliott v. Koch*, 200 Ill. App. 3d 1, 14, 558 N.E.2d 493, 502-03 (1990) (Third District); *Elberts v. Nussbaum Trucking, Inc.*, 97 Ill. App. 3d 381, 384, 422 N.E.2d 1040, 1042 (1981) (First District).

However, plaintiff contends the similar location of her previous and current injuries is insufficient to admit the evidence of the January 1993 accident. She asserts this evidence is admissible only if defendant can establish a causal connection between her present symptoms and the 1993 injury. Because defendant's evidence failed to establish this causal link, the court erred in admitting evidence of the January 1993 accident and injury. See *Brown*, 284 Ill. App. 3d at 404, 672 N.E.2d at 71.

In *Brown*, the Fifth District Appellate Court concluded evidence of a prior injury is admissible only if expert testimony establishes a causal link between the past injury and the present symptoms. The *Brown* court distinguished its earlier decision in *Wilson*, 226 Ill. App. 3d at 109-10, 589 N.E.2d at 668, by emphasizing the *Wilson* plaintiff's prior injury was permanent and resulted in symptoms similar to those he was experiencing. Thus, the *Wilson* defendant was not compelled to prove causation and evidence of the plaintiff's prior injury was admissible. See *Brown*, 284 Ill. App. 3d at 405, 672 N.E.2d at 72.

The *Brown* court reasoned the court's previous approach, *i.e.*, admitting evidence of a prior injury based solely on its similar location to the current injury, invites the jury to "speculate on a nexus between the past accident and the present injury. Such unfounded conjecture and guesswork constitutes a violation of the very cautionary instructions given to every Illinois juror in civil cases." *Brown*, 284 Ill. App. 3d at 405, 672 N.E.2d at 71.

We appreciate the potential problems outlined by the *Brown* court; however, relevant evidence is generally admissible. See *Elliott*, 200 Ill. App. 3d at 14, 558 N.E.2d at 503. For example, in personal injury actions, evidence of a prior injury to the same part of plaintiff's body is germane to both causation and the extent of plaintiff's damages. See *Molitor*, 251 Ill. App. 3d at 728, 622 N.E.2d at 1252; *Elliott*, 200 Ill. App. 3d at 14, 558 N.E.2d at 503. This evidence is especially relevant because plaintiff's prior injury was acquired under similar circumstances only two years before the instant accident and injury.

Furthermore, because the burden is on the plaintiff to prove negligence, not on the defendant to disprove it (see *Leonardi v. Loyola University*, 168 Ill. 2d 83, 94, 658 N.E.2d 450, 455 (1995)), defendant should not be held to the same standard of proof as plaintiff. *Cf. Brown*, 284 Ill. App. 3d at 404-05, 672 N.E.2d at 71. While expert testimony establishing a causal link between the past injury and present symptoms increases the weight afforded the evidence, defendant need not establish this link for the evidence to be admitted.

Moreover, evidence of a prior injury may be relevant for impeaching credibility, as demonstrated by this case. See *Wilson*, 226 Ill. App. 3d at 110, 589 N.E.2d at 668-69. Plaintiff's apparent failure to mention the 1993 accident to her treating physicians calls into question the sincerity of her allegations. This impeaching evidence is for the jury to weigh.

Consequently, evidence of a prior injury may be admissible when defendant *either* establishes a causal connection between the current and prior injury *or* the injuries involve the same area of the body. As long as there is some evidence of the nature, extent, duration, or treatment of the previous injury, an independent showing of causation is unnecessary. See *Molitor*, 251 Ill. App. 3d at 728, 622 N.E.2d at 1252.

■ After the 1993 automobile accident, plaintiff was treated by Dr. Rajeswaren for an acute cervical strain and received several weeks of physical therapy until she experienced pain-free range of motion. In the instant case, plaintiff professed a similar injury to her neck from her collision with defendant's vehicle. The trial court properly admitted evidence of the 1993 injury.

### B. The Jury's Verdict

■ Initially, we note both parties failed to request special interrogatories be submitted to the jury. See 735 ILCS 5/2—1108 (West 1996). Special interrogatories serve to clarify and sharpen the jury's consideration of the case. Further, the jury's responses shed light on its decision and narrow the potential issues on appeal, thereby making the appellate process more efficient. See Ill. Ann. Stat., ch. 110, par. 2—1108, Historical & Practice Notes, at 771 (Smith-Hurd 1983). Here, the jury's responses to special interrogatories would have allowed plaintiff to narrow her appeal to the individual issue or issues the jury found in defendant's favor.

■ However, without the assistance of special interrogatories, plaintiff appeals a general verdict. Consequently, she must establish each of the following potential adverse jury findings was contrary to the manifest weight of the evidence: (1) defendant was not negligent;

(2) defendant's negligence was not the cause of her injuries; (3) she was not injured; and (4) she was more than 50% negligent. Based on this record, we conclude the jury could have properly concluded plaintiff was not injured in the 1995 automobile accident.

■ As evidence of plaintiff's injury, she cites (1) Dr. Rajeswaren's testimony she was not suffering any discomfort prior to the accident, (2) Dr. Kirby's diagnosis of mild neck stiffness and spasms, (3) the clinical findings of Dr. Prathipati and Dr. Rajeswaren, (4) her complaints of lower back pain, and (5) the medical bills incurred as a result of the accident.

However, the evidence also revealed plaintiff did not want to go to the emergency room immediately after the accident and had to be persuaded to go. Once at the hospital, she denied lower back and neck pain during her initial exam. While plaintiff later complained of neck pain, tests conducted at the emergency room failed to uncover any evidence of a neck injury. Plaintiff asserted she told her treating physicians about her lower back pain even though both physicians denied knowing about the symptom. Further, two doctors testified fractures in plaintiff's back would have caused significant pain.

Although Dr. Prathipati diagnosed plaintiff with a chip and compression fracture in her lower back, two other doctors were unable to find similar injuries. Further, Dr. Prathipati's conclusion the 1995 accident caused plaintiff's injuries was undermined by plaintiff's failure to inform him of the 1993 accident. The jury was free to weigh this evidence in relation to Dr. Prathipati's diagnosis.

Also, plaintiff's credibility was impeached based on (1) her failure to inform her treating physicians of the 1993 accident, and (2) Dr. Rak's testimony plaintiff purposely restrained herself during a strength test. Because the evidence of plaintiff's injury consisted mostly of her testimony, her credibility is vital to the jury's determination. The jury could have disbelieved plaintiff and concluded the 1995 accident did not injure plaintiff or cause her alleged symptoms.

Based on her medical bills, plaintiff contends she is at least entitled to damages for expenses she incurred at the hospital. As a general rule, the amount of damages awarded is within the discretion of the jury (see *Majcher v. Laurel Motors, Inc.*, 287 Ill. App. 3d 719, 727, 680 N.E.2d 416, 422 (1997)) and plaintiff is only entitled to recover damages to the extent of her injury (see *Siegel v. Levy Organization Development Co.*, 182 Ill. App. 3d 859, 861, 538 N.E.2d 715, 716 (1989)). Presuming the jury concluded plaintiff was not injured, its refusal to award damages was consistent with its finding and within its discretion.

Furthermore, the plaintiff's failure to prove she was injured in the

1995 accident makes her alleged damages claim speculative in nature. See *Goran v. Glieberman*, 276 Ill. App. 3d 590, 595, 659 N.E.2d 56, 60 (1995). Because speculative damages are not recoverable (see *Siemieniec v. Lutheran General Hospital*, 117 Ill. 2d 230, 259, 512 N.E.2d 691, 706 (1987)), the jury's finding was not contrary to the manifest weight of the evidence.

We find the jury could have properly concluded plaintiff was not injured in the 1995 automobile accident. Therefore, the jury's verdict was not contrary to the manifest weight of the evidence and we need not address plaintiff's remaining arguments regarding this issue.

## III. CONCLUSION

For the reasons stated, the judgment of the trial court is affirmed.

Affirmed.

GARMAN, P.J., and COOK, J., concur.