EDWARD OBSZANSKI, Plaintiff-Appellant, v. FOSTER WHEELER CONSTRUCTION, INC., Defendant-Appellee.

First District (5th Division)  No. 1—01—0258

Opinion filed March 8, 2002.

QUINN, J., dissenting.

Anesi, Ozmon, Rodin, Novak & Kohen, Ltd., of Chicago (Martin J. Lucas, of counsel), for appellant.

Daniel G. Suber & Associates, of Chicago (Daniel G. Suber, of counsel), for appellee.

JUSTICE REID delivered the opinion of the court:

The plaintiff, Edward Obszanski, brought suit to recover damages for injuries he sustained while working as an ironworker for Pangere Corporation (Pangere), which was performing steel and siding erection on a jobsite where defendant Foster Wheeler Construction, Inc. (Foster), was the construction manager.

After trial, the jury returned a verdict in Obszanski's favor. The jury awarded damages for present and future pain and suffering, for medical expenses, and for value of lost earnings, but $0 for disability. On appeal, Obszanski contends the trial court abused its discretion when it: (1) denied his posttrial motion for a new trial on the issue of damages, and (2) allowed evidence of a subsequent injury. For the reasons that follow, we reverse and remand this matter for a new trial as to damages only.

## THE FACTS

On Friday, January 12, 1996, Obszanski was employed as an ironworker at a construction site in Robbins, Illinois, for Pangere where Foster was the construction manager of the project. The project involved the construction of multiple buildings and structures for a waste to energy plant. Heavy equipment such as cranes, lulls,[1] and large end loaders were used on the jobsite. These large pieces of equipment would create large ruts or craters in the ground in and around the jobsite. According to the plaintiff, the ground would not be filled in and smoothed over until the ironworkers left the jobsite. Snow, ice and mud were also present from time to time on the jobsite.

At trial, Obszanski testified that he injured his back while walking from his work area to a company tool box to retrieve shears. As he was walking, another ironworker yelled to him to beware of nearby overhead work. As Obszanski looked up to observe the overhead work, he testified, his "feet kicked out from underneath [him] and [he] landed on all fours," in a hole with snow and ice in it with mounds of dirt around it.

Immediately, Obszanski felt pain in his back. He was able to get up and after stretching returned to work. Obszanski did not immediately seek medical treatment, and his back pain grew worse over the next days.

On Monday, after working through the weekend, Obszanski visited the Blue Island Medical Clinic. There, he received medication for his back. Although his back pain persisted, Obszanski continued to work.

During working hours, on Thursday, January 18, 1996, Obszanski

---

[1]Lulls are lift devices with wheels.

visited Dr. Raymond Schlueter. Dr. Schlueter examined Obszanski, performed diagnostic tests and prescribed medication. At that time, the pain in his back began to radiate to his buttocks and legs. His back was stiff and there was soreness and burning in the buttocks and leg. The doctor prescribed narcotic medication as well as diagnostic tests, including a lumbar myelogram. The plaintiff was sedentary due to the pain radiating into his right leg. Any activity prompted more pain. The doctor's findings included diminished reflexes, a slight limp, and limited range of motion. These findings were consistent with a herniated disc compressing a nerve root in plaintiff's lumbar spine. Obszanski no longer returned to work.

On March 7, 1996, Obszanski sought a second opinion from Dr. Gary Skaletsky. Now, Obszanski was feeling pain as far down as his ankles and toes from the injury. After various medical tests and a diagnosis of a herniated disc, Obszanski underwent surgery on March 11, 1996. Dr. Skaletsky excised a large disc herniation which was extruding. Dr. Skaletsky testified that the herniation "had completely broken through the membrane or annulus where it usually resides within and was lying directly up against the nerve root." Dr. Skaletsky removed approximately 30% of the disc.

Dr. Skaletsky concluded the disc herniation was recent based on the condition of the disc when it was removed. It was his opinion that Obszanski sustained the injury when he fell on January 12, 1996.

Following the surgery, Obszanski underwent physical therapy. Dr. Skaletsky testified that therapy was prescribed to build strength, flexibility, endurance and mobility.

Dr. Skaletsky testified that removal of the disc material is a very poor way to relieve back pain. Disc operations typically will not relieve a person's lower-back pain completely. Patients can develop increasing lower-back pain after the disc herniation has been removed. Dr. Skaletsky expected Obszanski to experience episodic bouts of lower-back pain.

Dr. Skaletsky explained that "with the removal or loss of disc volume, the vertebral bodies move closer to each other. The joints holding the vertebrae together, which are known as the facet joints, do not mesh quite so well anymore. That there can be what is known as facet arthropathies; [he likened] that to cracking one's knuckles for a long time and seeing a lump of bone when one is older. This can be a competent cause of low back pain in the postoperative disc herniation patient."

Dr. Skaletsky stated that the scar tissue at the herniation site could also cause back pain. Dr. Skaletsky was also of the opinion that Obszanski was susceptible to developing degenerative arthritis in the

area of his herniation as a result of the surgery. Diagnostic films taken of Obszanski's back in 1999 confirmed the development of arthritis, which in Skaletsky's opinion was partially caused by the fall in January 1996.

Dr. John McClellan testified on behalf of the defendant that in his opinion falls do not cause disc herniations. Dr. McClellan did not think that the 1996 fall was a contributing factor to Obszanski's herniated disc. Instead, Dr. McClellan believed Obszanski suffered from degenerative arthritis. However, Dr. McClellan agreed that he could not state that Obszanski had a herniated disc prior to his fall in January 1996.

Obszanski testified that he injured his back in 1988 and in 1990. In 1988, Obszanski said, he was hit with a concrete drill in the back. Afterwards, his back was stiff and sore. Obszanski went to physical therapy and was unable to work for a few weeks.

In 1990, while Obszanski was working as an electrician, he felt a pain in his back. After visiting the doctor, Obszanski went to physical therapy. Obszanski testified that subsequent to the 1990 injury he experienced no back pains until January 1996.

At the conclusion of trial, the jury returned a verdict in favor of Obszanski. It awarded him $40,000 for present and future pain and suffering, $20,217 for medical expenses, $28,470 for value of lost earnings, and $0 for disability. After a reduction for contributory negligence, Obszanski received damages in the total amount of $55,872.81. Obszanski filed a timely posttrial motion which was denied. Obszanski subsequently filed a timely notice of appeal.

## ANALYSIS

### I

Obszanski contends the trial court abused its discretion when it denied his posttrial motion for a new trial on the issue of damages. Specifically, Obszanski asserts that the evidence presented at trial concerning his disability and pain and suffering was uncontroverted, and as such, the jury's award of $0 damages for disability rendered the verdict inconsistent with the manifest weight of the evidence. We agree.

■ The trial court's decision to deny a posttrial motion for a new trial is reviewed under an abuse of discretion standard. *Branum v. Slezak Construction Co.*, 289 Ill. App. 3d 948, 956 (1997); *Natalino v. JMB Realty Corp.*, 277 Ill. App. 3d 270, 277 (1995).

■ The assessment of damages is a question of fact and is within the province of the jury. A jury's award of damages in a particular case is entitled to "substantial deference." *Snover v. McGraw*, 172 Ill. 2d

438, 447 (1996); *Torres v. Irving Press, Inc.*, 303 Ill. App. 3d 151, 156-57 (1999). "Nevertheless, we also recognize that 'a reviewing court may order a new trial if the damages are manifestly inadequate or if it is clear that the proved elements of damages have been ignored or if the amount awarded bears no reasonable relationship to the loss suffered by the plaintiff.' *Hollis v. R. Latoria Construction, Inc.*, 108 Ill. 2d 401, 407 (1985)." *Torres*, 303 Ill. App. 3d at 157.

■ "A jury's award will not be found to be against the manifest weight of the evidence merely because it can be characterized as less than generous. [Citation.] Furthermore, it is of no consequence to the validity of an award that it differs from an estimate of damages made by an expert, for a jury may reduce an expert's damage calculation without invalidating its verdict. [Citations.] Furthermore, mere dissatisfaction does not require a new trial on damages [citation], because the mere fact that the verdict is less than the claimed damages does not necessarily mean the award is inadequate since the jury is free to determine the credibility of the witnesses and to assess the weight accorded to their testimony. [Citation.]" *Branum*, 289 Ill. App. 3d at 953.

■ "Physical 'disability' is defined as '[a]bsence of competent physical, intellectual, or moral powers; *** incapacity caused by physical defect or infirmity.' (Black's Law Dictionary 461 (6th ed. 1990); see *Morescki v. Leuschke* (1991), 217 Ill. App. 3d 456, 459.) The term 'disfigure' means 'to make less complete, perfect, or beautiful in appearance or character.' (Webster's Third New International Dictionary 649 (1986).)" *Holston v. The Sisters of the Third Order of St. Francis*, 165 Ill. 2d 150, 175 (1995).

In *Torres*, a motorist brought suit to recover damages for injuries sustained during an automobile collision. The jury found the plaintiff was 50% negligent and awarded $405,000 but failed to include an award for loss of normal life. On appeal, the plaintiff argued the jury's $0 award for loss of normal life ignored the proven evidence, was inconsistent with the jury's award for other elements of damages and disregarded objective evidence of the effects of her injuries.

The *Torres* court held the jury's award of $0 to be outside the confines of the evidence. The court found the evidence showed that as a result of her injury, the plaintiff was in a leg cast for two months, would never regain full motion in her ankle, had a 25% chance of developing arthritis, and could not perform certain routine tasks anymore, and expert testimony revealed plaintiff would not be able to run and that strenuous activities could cause her problems in the future. Subsequently, the court held the plaintiff presented sufficient evidence and the jury's $0 award disregarded the evidence. *Torres*, 303 Ill. App. 3d at 159-60.

In *Blevins v. Inland Steel Co.*, 180 Ill. App. 3d 286 (1989), the plaintiff slipped and fell on defendant's property. At the conclusion of trial, the jury returned a verdict in plaintiff's favor. The plaintiff appealed arguing that the jury's verdict was manifestly inadequate because it awarded a lesser sum than that established by his medical expenses and lost wages.

As a result of the fall, plaintiff suffered permanent damages to his knee in the form of a residual instability and traumatic degenerative joint disease. For a six- to eight-month convalescent period plaintiff was unable to work, run, jump or climb a ladder, plaintiff attended physical therapy for over two months and plaintiff was unable to engage in some activities with his children. The court found that the plaintiff's evidence concerning his injuries was not refuted at trial and held that the award of damages did not comport with the "largely uncontradicted evidence." Accordingly, the court held that the plaintiff was entitled to a new trial on the issue of damages. *Blevins*, 180 Ill. App. 3d at 291.

Foster maintains the issue of damages was sharply contested at trial and that the jury's verdict award was supported by the evidence. Our examination of the record shows that it does not support Foster's contentions.

In this case, there was uncontroverted evidence which showed that Obszanski was disabled after the accident. Obszanski testified that the injury occurred on Friday, January 12, 1996. Due to the pain from the injury, January 18, 1996, was the last day that Obszanski worked before having surgery on March 11, 1996.

After the surgery, Obszanski testified, he stayed in the hospital overnight. Obszanski then participated in physical therapy until May 1996 and was not medically released to return to work until June 1996. After finishing therapy, Obszanski testified, he still experienced minor pain in his legs and some back stiffness. Obszanski also testified that as a result of discomfort and back pain, he no longer plays certain games with his children, coaches sports, or plays basketball or baseball. As such, the jury's $0 disability award does not comport with the evidence and cannot stand.

■ The standard for determining whether a new trial should be granted that is confined to the issue of damages is well settled:

> " ' "A new trial on the question of damages only is appropriately granted 'where (1) the jury's verdict on the question of liability is amply supported by the evidence; (2) the questions of damages and liability are so separate and distinct that a trial limited to the question of damages is not unfair to the defendant; and (3) the record suggests neither that the jury reached a compromise verdict, nor

that, in some other identifiable manner, the error which resulted in the jury's awarding inadequate damages also affected its verdict on the question of liability.' " ' (*Barr v. Groll* (1991), 208 Ill. App. 3d 318, 323, 567 N.E.2d 13, quoting *Hollis v. R. Latoria Construction, Inc.* (1985), 108 Ill. 2d 401, 408, 485 N.E.2d 4, 7, quoting *Balestri v. Terminal Freight Cooperative Association* (1979), 76 Ill. 2d 451, 456, 394 N.E.2d 391, 393.)" *Burnham v. Lewis*, 217 Ill. App. 3d 752, 757 (1991).

■ Based upon a review of the record, we find that the evidence supports the jury's findings regarding the issue of liability. A new trial limited to the question of damages would not be unfair to the defendant, and nothing in the record suggests the jury reached a compromise verdict or that the error resulting in the inadequate disability award also affected the findings as to liability. Therefore, a new trial on the question of damages only is appropriate in this case.

## II

We will also address the second issue raised on appeal because it may be revisited on remand. Obszanski also maintains that the trial court erred when it allowed evidence of a back injury that occurred after the injury at issue. We agree.

In October 1999, Obszanski had an accident while working as an electrician for Huen Electric. During the accident, Obszanski suffered a trauma to the same region of his lower back that was injured in 1996. Obszanski subsequently sought medical treatment from Dr. Skaletsky. Dr. Skaletsky diagnosed Obszanski with a herniation to the same area of his lower back and performed a second operation where approximately 45% of the disc was removed.

Prior to trial, Obszanski filed a motion *in limine* to prohibit any reference to the herniation he suffered in 1999. The trial court granted the motion and barred any testimony from defense witness Dr. McClellan concerning the 1999 herniation. However, the trial judge also informed the parties that testimony concerning the 1999 herniation would become admissible if it affected the case in terms of Obszanski proving his disability. The trial court warned that testimony from Obszanski concerning his inability to perform certain tasks because of his injury would open the door and make the 1999 herniation relevant as to damages.

At trial, Obszanski admitted on direct examination that he still suffered back pain and discomfort after the slip and fall in 1996. Obszanski also testified that due to his current condition he could no longer play basketball or coach baseball games.

Subsequently, on cross-examination, the defense questioned Obszanski about the 1999 herniation. After objections from Obszanski's

counsel, the trial court gave the defense the following parameters under which it could question Obszanski about the 1999 herniation:

> "You can say that, 'You are complaining of pain today, are you not? And you are saying that pain is related to this incident, are you not? Isn't it true you had another incident after this incident in 1999, same L5-S1, same surgery, and that it's intervening.' That's the total. Those are the parameters."

Following the trial court's guidelines, the defense then proceeded to finish its cross-examination of Obszanski.

■ The admission of evidence rests largely within the sound discretion of the trial court, and its decision will not be reversed unless that discretion has been clearly abused. *Boersma v. Amoco Oil Co.*, 276 Ill. App. 3d 638, 648 (1995).

In this case, the defendant was permitted to introduce evidence of a *subsequent* injury to plaintiff. Normally, the dispute is over a *prior* injury to the plaintiff. A line of appellate cases developed what was known as the "same part of the body" rule, which allowed evidence of a prior injury without any expert support if it was a similar injury to the same part of the body that plaintiff claimed was injured in the case before the court. See *Brown v. Baker*, 284 Ill. App. 3d 401, 404 (1996); *Bailey v. Wilson*, 299 Ill. App. 3d 297, 303-04 (1998); *Elliott v. Koch*, 200 Ill. App. 3d 1, 14 (1990). See also *Cancio v. White*, 297 Ill. App. 3d 422, 430 (1998); *Lagestee v. Days Inn Management Co.*, 303 Ill. App. 3d 935, 946-47 (1999).

*Cancio*, relying on *Brown*, concluded that "absent competent and relevant evidence of a causal connection between the preexisting condition and the injury complained of, evidence of the preexisting condition is inadmissible." *Cancio*, 297 Ill. App. 3d at 430.

Previously, Illinois courts had focused merely on whether the prior and present injuries were to the same part of the body. The *Brown* court found that analysis to be in need of refining. *Brown*, 284 Ill. App. 3d at 404.

The rationale behind the original rule was that a defendant should be able to cross-examine a plaintiff regarding any previous injuries if they are relevant and similar to those at issue to show that perhaps the present ailments are from a previous accident or injury and not from the events which gave rise to the current litigation. *Leahy v. Illinois Power Co.*, 103 Ill. App. 3d 487 (1981); *Saputo v. Fatla*, 25 Ill. App. 3d 775 (1975).

*Brown* decided that if a prior injury has long since healed and has shown no recurring symptoms, a defendant should not be permitted to introduce evidence of the prior injury without first establishing causation. *Brown*, 284 Ill. App. 3d at 405. However, *Brown* distinguished its

ruling from the facts in *Wilson v. Granite City Steel Division of National Steel Corp.*, 226 Ill. App. 3d 96 (1992), where the court found that a prior knee injury was properly admissible without an independent showing of causation because there was evidence that the symptoms from the prior injury were similar, and most importantly, in the previous injury case the plaintiff's doctor testified that plaintiff's symptoms were *permanent. Wilson*, 226 Ill. App. 3d at 108.

■ In *Voykin v. Estate of DeBoer*, 192 Ill. 2d 49 (2000), our supreme court rejected the "same part of the body" rule. The *Voykin* court characterized the "same part of the body" rule as "nothing more than a bright-line relevancy standard." *Voykin*, 192 Ill. 2d at 57. The court wrote:

> "[W]e conclude that, if a defendant wishes to introduce evidence that the plaintiff has suffered a prior injury, whether to the 'same part of the body' or not, the defendant must introduce expert evidence demonstrating why the prior injury is relevant to causation, damages, or some other issue of consequence. This rule applies unless the trial court, in its discretion, determines that the natures of the prior and current injuries are such that a lay person can readily appraise the relationship, if any, between those injuries without expert assistance." *Voykin*, 192 Ill. 2d at 59.

In *Caliban v. Patel*, 322 Ill. App. 3d 251 (2001), a motorist was rear-ended and brought a negligence action to recover for damages sustained. On appeal, the plaintiff argued that the trial court erred in denying his motion *in limine* which sought to prevent the introduction of evidence regarding his prior and subsequent injuries. Relying on *Voykin*, the *Caliban* court found that the trial court erred when it allowed the introduction of a subsequent injury without requiring the defendant to offer supporting expert testimony. *Caliban*, 322 Ill. App. 3d at 256.

■ Here, the introduction of evidence concerning Obszanski's subsequent injury without any supporting expert testimony was error. During defendant's cross-examination of Obszanski, the following dialogue occurred:

> "Q. Okay. You still had pain in your back. And then later on, while working as an electrician, you have a fourth accident on the job: isn't that right?
>
> [Plaintiff's Attorney]: Objection, your Honor, relevance.
>
> [Defendant's Attorney]: We have been over this.
>
> THE COURT: Overruled.
>
> Q. A fourth accident when, October 1999, correct?
>
> A. Correct.
>
> Q. Who were you working for?
>
> A. Huen Electric.

Q. [A] contract with Walsh Contractors, correct?
A. Correct.
Q. And another slip-and-fall accident; is that right?
[Plaintiff's Attorney]: I'll just object.

* * *

THE COURT: Counsel you are coming very close to violating the motion *in limine*. I allowed you to go into the 1999 incident for one purpose only, and that is because of the plaintiff's current complaint of pain which he alleges is solely related to the incident at issue in this case."

This type of questioning by defense counsel without expert testimony could be prejudicial and in conflict with the *Voykin* decision. With an appropriate foundation laid by a medical expert, if that could be done, defense counsel should be allowed to show that the subsequent injury is a "cause" of plaintiff's current complaint. This is difficult because the injury in question is claimed to be permanent in nature. If medical evidence can show enhanced or separate pain from the subsequent injury, then the jury should hear that. If not, then it should not come in at all.

## CONCLUSION

For the foregoing reasons, the decision of the trial court is reversed and this cause is remanded for a new trial solely on the issue of damages.

Reversed and remanded with directions.

CAMPBELL, P.J., concurs.

JUSTICE QUINN, dissenting:
I respectfully dissent. The majority asserts that "there was uncontroverted evidence which showed that Obszanski was disabled after the accident." 328 Ill. App. 3d at 556. The record reveals that the issues of liability and damages were completely controverted at trial. The defense medical expert, Dr. McClellan, testified that plaintiff's herniated disc was due to degeneration over time and was not due to plaintiff's fall. While plaintiff's counsel did argue that plaintiff was permanently disabled as a result of the fall, plaintiff testified that he returned to work immediately after the fall. Plaintiff then worked voluntary overtime the next two days and also worked four additional days before seeing a doctor who recommended that plaintiff cease working. Plaintiff was employed as an ironworker. The record contains much evidence as to how physically demanding this

job is. Plaintiff testified that he felt fine when he did return to work after his operation, and his medical expert, Dr. Skaletsky, testified that plaintiff had a "complete recovery" from the herniated disc. Plaintiff subsequently returned to work as an ironworker for more than a year and a half. He then became an electrician, which is also a physically demanding job, and subsequently suffered another slip and fall which injured the exact same area of his lower back as that injured in the instant case.

As support for reversing the jury's verdict, the majority relies on the holdings in *Torres v. Irving Press, Inc.*, 303 Ill. App. 3d 151 (1999), *Burnham v. Lewis*, 217 Ill. App. 3d 752 (1991), and *Blevins v. Inland Steel, Inc.*, 180 Ill. App. 3d 286 (1989). In each of these cases, the evidence that the plaintiffs introduced that they were disabled truly was uncontroverted. That is in sharp contrast to the evidence here.

The majority cites *Snover v. McGraw*, 172 Ill. 2d 438, 447 (1996), for the proposition that "[a] jury's award of damages in a particular case is entitled to 'substantial deference.' " 328 Ill. App. 3d at 554. That opinion went on: "The determination of damages is a question of fact that is within the discretion of the jury. [Citations.] This court will not upset a jury's award of damages 'unless a proven element of damages was ignored, the verdict resulted from passion or prejudice, or the award bears no reasonable relationship to the loss suffered.' [Citations.]" 172 Ill. 2d at 447.

In *Snover*, our supreme court held that a jury is permitted to award pain-related medical expenses while at the same time also determining that the evidence of pain and suffering was not sufficient to support a monetary award. In doing so, the court considered the fact that this was not an inconsistency which would call for a new trial on the issue of damages where the jury had to resolve credibility questions, including the plaintiff's delay in seeking some of the treatment, her ability to continue participating in everyday activities, and the conflicting expert witness testimony.

*Snover* was followed in *Zuder v. Gibson*, 288 Ill. App. 3d 329 (1997), and *White v. Leuth*, 283 Ill. App. 3d 714 (1996). In *Zuder*, plaintiff suffered injuries in a traffic accident. A jury subsequently gave plaintiff an award including damages for medical expenses, lost income, and pain and suffering but gave no award for loss of normal life or disfigurement. The appellate court held that such an award was not irreconcilably inconsistent based on the conflicting evidence presented and it was within the sole province of the jury to determine the weight and credibility to be given the witnesses and evidence. Similarly, in *White*, a jury awarded a child bicyclist who crashed into a truck $70,000 for medical expenses and pain and suffering but nothing for disability and disfigurement. In affirming the award, the appellate

court focused on trial testimony that the child would not suffer a permanent loss of function of his teeth and no permanent restriction in his diet or physical activity. We held that the determination of damages turned solely on the particular facts of the case and a jury's assessment of damages is entitled to substantial deference.

As the majority points out (328 Ill. App. 3d at 555), "disability" has been defined as the "[a]bsence of physical, intellectual or moral powers; *** incapacity caused by physical defect or deformity" (Black's Law Dictionary 461 (6th ed. 1990)). In this case, plaintiff's counsel argued that his client was *permanently* disabled. Plaintiff continued to work as an ironworker for six days after the fall and subsequently recovered sufficiently after surgery to resume his occupation for more than a year and a half before taking another strenuous job. To reverse the jury's decision that plaintiff did not suffer a permanent "absence of physical powers" or an "incapacity caused by physical defect or deformity," it is not enough for the majority to simply disagree with that decision. The majority must find that " 'a proven element of damages was ignored, the verdict resulted from passion or prejudice, or the award bears no reasonable relationship to the loss suffered.' [Citation.]" *Snover v. McGraw*, 172 Ill. 2d at 447. In the absence of such a finding, the jury's verdict must be affirmed.

Even if reversal were appropriate, I believe that limiting the retrial to the sole issue of damages is also erroneous. As the majority points out, granting such a new trial is only appropriate when " 'the questions of damages and liability are so separate and distinct that a trial limited to the question of damages is not unfair to the defendant.' " 328 Ill. App. 3d at 556, quoting *Burnham v. Lewis*, 217 Ill. App. 3d at 757. In the instant case, the issues of liability and damages are inextricably intertwined.

Finally, I also disagree with the majority's decision to reverse the trial court's ruling allowing the admission of evidence of plaintiff's subsequent injury. A trial court's evidentiary rulings as to the admissibility of evidence will not be overturned, absent a clear abuse of discretion resulting in manifest prejudice to a party. *Moore v. Anchor Organization for Health Maintenance*, 284 Ill. App. 3d 874, 879 (1996). The trial court weighed the pros and cons of admitting the uncontroverted evidence of plaintiff's subsequent injury and, after due consideration, chose to allow defense counsel to address it in a severely restricted manner. Plaintiff claimed that his back injury was permanent and that, at the time of trial, he still suffered pain and could not participate in certain activities because of the injury he received in 1996. Plaintiff's 1999 injury occurred as a result of another slip and fall, the injury was identical to that plaintiff suffered in 1996,

563

it was in the exact same location in the lower back, and he was treated by the same doctor. In order to determine the extent of the damages for which this defendant was responsible, the jury had to be able to apportion plaintiff's current pain and current inability to participate in physical activities between the 1996 fall as opposed to the 1999 fall.

The majority's opinion does not comport with the extremely deferential standard of review we are to give to the decisions of juries and trial judges.