DAVID LAGESTEE *et al.*, Plaintiffs-Appellants, v. DAYS INN MANAGE-MENT COMPANY *et al.*, Defendants-Appellees.

First District (1st Division)    No. 1—97—4186

Opinion filed March 15, 1999.

Steinberg, Polacek & Goodman, of Chicago (Bradley D. Steinberg, of counsel), for appellants.

David A. Izzo & Associates, of Chicago (Daniel A. Popko, of counsel), for appellees.

JUSTICE O'MARA FROSSARD delivered the opinion of the court:
Plaintiffs David and Jilayne Lagestee filed this negligence action against the defendants, various entities responsible for the ownership and management of the Days Inn Hotel on Lake Shore Drive in Chicago. Plaintiffs alleged that on February 19, 1991, plaintiff David Lagestee (David) sustained personal injuries on the premises of the Days Inn Hotel and that the negligence of the employees and agents of the defendants proximately caused David's injuries. Following a jury trial, the jury found in favor of the defendants. The trial court denied plaintiffs' posttrial motions for judgment notwithstanding the verdict or, alternatively, a new trial.

On appeal, plaintiffs raise two issues for review. Plaintiffs contend that the trial court erred in: (1) barring plaintiffs from presenting rebuttal testimony following the testimony of defendants' only witness, Tammy Lestinsky; and (2) allowing defendants to cross-examine plaintiffs' medical expert witnesses on David's cigarette smoking, preexisting condition, prior injuries, and prior accidents.

At trial, David testified that on February 19, 1991, he was employed at Ace Disposal, a waste hauling company. David stated that on that date he was in good health. He also testified that he had previously injured his back several years earlier, but the injuries were not serious and he had back pain for only a few days. David testified in 1991 he was not experiencing any symptoms from these prior injuries.

On February 19, 1991, David's duties as a waste hauler included picking up a Dumpster at the Days Inn Hotel in Chicago. David had removed the Dumpster on prior occasions. At the Dumpster location, he noticed that a chain-link fence next to the Dumpster was missing a support pipe, and the pipe was actually lying on the ground next to the fence. In addition, the fence had a metal coupling sticking out from the area where it lacked piping. David had reported the condition of the fence before the accident to Tammy Lestinsky, a security guard employed by the defendants. The fence was never repaired.

David further testified that, on the date of the accident, the ground area around the Dumpster was littered with debris and was dirty. In order to separate the Dumpster from the compactor, he was required to loosen a ratchet handle on the Dumpster. While performing this task, David slipped backward and fell on the chain-link fence. His lower back struck the pipe coupling protruding from the fence. After the fall, he noticed that he slipped on tomato paste or sauce and that the paste covered his arms and legs. He also sustained an abrasion or cut on his right arm.

David testified that, following the fall, he reported the accident to Tammy Lestinsky. He told her that he had fallen and that the area around the Dumpster was a mess. Lestinsky told him that she would call house cleaning. Lestinsky assisted David with cleaning the abrasion to his right arm. Lestinsky did not fill out an accident report or examine the area around the Dumpster. After speaking with Lestinsky, David removed the Dumpster and left the Days Inn Hotel. There were no other witnesses to his fall.

David further testified that he returned to the Days Inn Hotel in July of 1991 with his attorneys, Kenneth Lewis and Ann Louise Kleper. David and his attorneys spoke with Lestinsky and she confirmed that she saw that David was injured, that she assisted him with his injuries, and that she believed she called someone to clean the area where he stated he fell.

David additionally testified that, as a result of the fall at the Days Inn Hotel, he sustained an injury to his back. He stated that, following the accident, he had lower back pain but was still able to work. Because the back pain continued, he sought medical treatment from his family physician in March of 1991. Eventually, David had severe pain in his lower back and right leg and was unable to sit down or bend over. He was referred to a neurologist, who recommended microdisectomy surgery on his back. On May 3, 1991, David had the back surgery. Following the surgery, his back pain was substantially reduced, but he still continued to have some pain. David further testified that because of the continued back pain, he had difficulties performing his duties as a waste hauler and took a desk job.

Dr. Charles Mylan Chuman testified that he is a neurological surgeon and first treated David on May 3, 1991, for severe back and right leg pain. Dr. Chuman stated David was unable to raise his right leg while lying on his back. Dr. Chuman found muscle weakness in David's right leg and initially diagnosed David with right sacral one radiculopathy. Dr. Chuman then performed a myelogram to determine if David had any disk or nerve problems in his spine. The myelogram revealed that David sustained a herniation in the bottom disk in his spine at the L5-S1 level. Dr. Chuman further testified that in his opinion the herniated L5-S1 disk caused David's pain in his right leg.

On May 3, 1991, Dr. Chuman performed an operation on David to remove the ruptured portions of the herniated disk. Dr. Chuman continued to treat David until June 6, 1991. He testified that, during this time frame, David was unable to perform any bending or twisting activities and was unable to perform his job duties. Dr. Chuman described the surgery as successful and substantially decreased David's pain.

Dr. Chuman testified that in his medical opinion David's fall on February 19, 1991, caused the disk herniation. Dr. Chuman stated that when he performed surgery on David in May of 1991, he found a fresh injury that had occurred in the recent past. Dr. Chuman additionally stated that the disk herniation occurred from trauma that David sustained within the previous year. Dr. Chuman opined that the L5-S1 disk herniation was a permanent condition.

On cross-examination, defense counsel asked Dr. Chuman whether he recommends to his patients that they stop smoking cigarettes and whether there exist any medical studies that state smoking cigarettes causes a permanent disk injury in the lumbar spine. Dr. Chuman answered "yes" to these questions. Defense counsel also questioned Dr. Chuman on whether David could have sustained the disk herniation at the L5-S1 nerve root a year prior to the surgery but not have

had any pressure on the nerve or subjective pain. Dr. Chuman responded "no" to this question, because, according to Dr. Chuman, David's disk injury was too big and was a fresh injury.

Plaintiffs called an additional expert witness, Michael Roy Treister, M.D. Dr. Treister, an orthopedic surgeon, testified that he reviewed David's medical records and first examined him in February of 1992. Dr. Treister stated that between the time of his accident on February 19, 1991, and the time he had surgery on May 3, 1991, David had a herniated disk at the L5-S1 level. In addition, Dr. Treister found that David had a bulging disk at the L4-L5 level, but concluded that the disk was not impinging on any nerve. Dr. Treister diagnosed David with degenerative disk disease, a by-product of aging. Dr. Treister testified that in his medical opinion David's falling accident caused the L5-S1 herniated disk. Dr. Treister specifically opined that the trauma from his lower back striking the pipe caused the herniation.

Dr. Treister did not believe that any degenerative disk changes in David's spine were a cause of the herniated L5-S1 disk, but that trauma to his spine in fact caused the herniation. However, he also stated that David "had some degree of degenerative disk disease, or he wouldn't have had the disk herniation." Dr. Treister testified that the herniated disk was a fresh injury because of its appearance at the time Dr. Chuman operated on the disk. Dr. Treister additionally testified that David sustained a permanent injury and that he properly changed his lifestyle to avoid heavy lifting and other activities that could cause future back problems or other herniations.

Moreover, Dr. Treister stated that David's smoking of cigarettes had no causal connection with the L5-S1 disk herniation. On cross-examination, defense counsel questioned Dr. Treister on David's accident in 1986 when he fell off a loading dock and injured his back. According to Dr. Treister's reports, a 1986 falling accident caused David to sustain a fractured third lumbar vertebra at the L3 level. Dr. Treister, however, testified that because the fracture constituted a non-united hypophysis, he had never seen this type of injury cause back pain. Dr. Treister then opined that the L3 hypophysis was unrelated to David's L5-S1 disk herniation because David had no complaints of pain in his thigh area or other areas of his body that would correlate with the L3 hypophysis back injury.

Defense counsel additionally asked Dr. Treister about a prior injury to David's back in 1987 when he was in a car accident and about "some type of back injury" he sustained while playing football in high school. Dr. Treister responded that his records reflected these previous injuries. Dr. Treister, however, testified that in his opinion none of these prior injuries caused the disk herniation. Dr. Treister

stated David's medical history was devoid of any symptoms or history correlating to a L5-S1 disk herniation.

The defendants did not call any expert medical witnesses. The defendants only called one witness, Tammy Lestinsky. She testified that she was a security guard and timekeeper at the Days Inn Hotel from February 1987 until September 1993. She remembered the plaintiff, David Lagestee, coming to the Days Inn Hotel a few times a week to remove the Dumpsters.

Lestinsky testified that on February 19, 1991, David never reported to her that he fell near the Dumpster, that he never stated there was tomato sauce or paste near the Dumpster, and that he did not ask her for a bandage or other medical assistance. Lestinsky then stated that David, in July 1991, returned to the Days Inn with two attorneys. They took pictures of the Dumpster area and asked her for a statement. Lestinsky testified that David told her that he was there for a "compensation," that Days Inn had nothing to do with the compensation, and that he requested if Lestinsky would state on a tape recorder that she gave him a bandage. Lestinsky then testified that she gave a recorded statement about David requesting a bandage after he fell.

The tape recording was played in front of the jury. In the recording, Lestinsky stated that on February 19, 1991, David reported to her that he fell near the Dumpster and that she saw that his arm was bleeding. Lestinsky identified her voice as the one on the tape recorder. She testified that she gave the statement because she felt pressured and that David told her what to say.

After Lestinsky testified, defendants rested. Plaintiffs requested permission to call two rebuttal witnesses, Ann Louise Kleper and Ken Lewis. Plaintiffs' counsel stated to the trial court that Lestinsky testified that she had lied on the tape recording about assisting David and that plaintiffs' witnesses would rebut that testimony. The trial court found that timely notice of the rebuttal testimony was lacking and that it was unclear from Lestinsky's testimony who exactly told her to speak on the tape. Thus, the trial court denied plaintiffs' request to present rebuttal evidence.

Before closing arguments, plaintiffs renewed their request to call a rebuttal witness. Plaintiffs' counsel told the court that he intended to call David to rebut Lestinsky's testimony by asking him if he told Lestinsky what to say on the tape recording. The trial court again denied plaintiffs' request. The jury found in favor of the defendants and the trial court denied plaintiffs' posttrial motions.

Plaintiffs first argue that the trial court erred in precluding the plaintiffs from calling a rebuttal witness following the testimony of

Tammy Lestinsky. The defendants counter that plaintiffs failed to make an appropriate offer of proof regarding the excluded evidence and therefore failed to preserve this issue for review.

A proponent of excluded evidence is required to make an adequate offer of proof in the trial court to preserve the issue for review. *In re A.M.*, 274 Ill. App. 3d 702, 709, 653 N.E.2d 1294 (1995). The purpose of an offer of proof is to disclose to opposing counsel and the trial court the substance of the excluded evidence and to enable the reviewing court to determine if the trial court committed error. *People v. Andrews*, 146 Ill. 2d 413, 420-21, 588 N.E.2d 1126 (1992).

A statement by counsel may be a sufficient offer of proof when the offered evidence is obvious and when neither opposing counsel nor the court disputes counsel's statement. *Wright v. Stokes*, 167 Ill. App. 3d 887, 891, 522 N.E.2d 308 (1988). In *Wright*, plaintiff sued the defendant for personal injuries sustained in a car accident. During defendant's testimony, defendant denied that she pled guilty to a traffic offense as a result of the car accident. *Wright*, 167 Ill. App. 3d at 890. In rebuttal, plaintiff's counsel sought to call a local county clerk to impeach the defendant on the traffic offense, but the trial court denied this request. *Wright*, 167 Ill. App. 3d at 890. On appeal, the court found that counsel's statement to the trial court where he stated that he intended to call a local county clerk to impeach the defendant constituted a sufficient offer of proof. *Wright*, 167 Ill. App. 3d at 891.

Similarly, in *In re A.M.*, a witness in a petition for wardship of her minor siblings denied telling a youth counselor that she recanted allegations of sexual abuse against her father because she did not want to hurt her father. *In re A.M.*, 274 Ill. App. 3d at 710. To rebut this denial, counsel informed the trial court that he intended to call the youth counselor to impeach the witness. *In re A.M.*, 274 Ill. App. 3d at 719. The trial court refused the evidence. On appeal, the court held that this statement constituted a sufficient offer of proof because it "adequately advise[d] the court of the nature and character of the evidence sought to be introduced." *In re A.M.*, 274 Ill. App. 3d at 709.

In this case, the statements made by plaintiffs' counsel to the trial court regarding the proposed rebuttal testimony were a sufficient offer of proof. Lestinsky testified that David pressured her and told her to say that she assisted him on February 19, 1991. After defendants rested, plaintiffs' counsel first stated to the trial court that he intended to call in rebuttal the two lawyers who were with David at the time of this conversation to impeach Lestinsky. The trial court denied this request. Before closing arguments, plaintiffs' counsel additionally stated to the trial court that he wanted "to put on [David] Scott Lagestee just to ask him the question: Did that conversation occur, did he tell [Lestinsky] what to say."

In response to plaintiffs' counsel's statements, the trial court stated it was unclear who told Lestinsky what to say and held that there was no need for rebuttal evidence. Defense counsel replied that Lestinsky's testimony should not have surprised plaintiffs' counsel. Therefore, neither defense counsel nor the trial court disputed that plaintiffs' witnesses would contradict Lestinsky's testimony that David told her what to say in July of 1991. Moreover, like counsel's statements in *Wright* and in *In re A.M.*, it was obvious from plaintiffs' counsel's statements to the trial court that his rebuttal witnesses sought to impeach Lestinsky about her prior conversation with David Lagestee. Therefore, we find that plaintiffs have made a sufficient offer of proof and preserved this issue for review.

We now address whether the trial court erred in excluding plaintiffs' proposed rebuttal testimony. Rebuttal evidence is admissible "if it tends to explain, repel, contradict or disprove the evidence of defendant." *People ex rel. Mendez v. Villa*, 260 Ill. App. 3d 866, 870, 632 N.E.2d 322 (1994). A reviewing court may consider errors in the exclusion of evidence and grant a new trial if there were serious and prejudicial errors made at trial. *Yates v. Chicago National League Ball Club, Inc.*, 230 Ill. App. 3d 472, 483, 595 N.E.2d 570 (1992).

If a defendant presents in its case in chief an affirmative matter to support its defense, the plaintiff then has the right to introduce evidence in rebuttal as to such affirmative matter. *Flanagan v. Redondo*, 231 Ill. App. 3d 956, 967, 595 N.E.2d 1077 (1991). In *Flanagan*, a medical malpractice case, defendant's expert witness used a model to aid his testimony to discredit one of plaintiff's expert treating physicians. *Flanagan*, 231 Ill. App. 3d at 968. In rebuttal, plaintiff requested to re-call the treating physician to rebut the accuracy of the model that defendant's expert used. The trial court denied the request. While not reversing the case on this issue, the appellate court found error in the court's exclusion of plaintiff's rebuttal evidence. *Flanagan*, 231 Ill. App. 3d at 968. The court reasoned that plaintiff's proposed rebuttal testimony explained issues raised in the testimony of defendant's expert and was proper rebuttal evidence. *Flanagan*, 231 Ill. App. 3d at 968.

In *Pellico v. E.L. Ramm Co.*, 68 Ill. App. 2d 322, 328-29, 216 N.E.2d 258 (1966), the defendant called a police officer to impeach the plaintiff's testimony as to the facts of the contested traffic accident. The plaintiff requested to call in rebuttal the interpreter who translated plaintiff's statement from Italian to English in front of the testifying police officer to dispute the officer's testimony. *Pellico*, 68 Ill. App. 3d at 325-26. The trial court denied the request and the appellate court reversed. The court held that the police officer's testimony pre-

sented affirmative evidence concerning plaintiff's conduct at the time of the accident, and thus the plaintiff was entitled to rebut the police officer's testimony. *Pellico*, 68 Ill. App. 3d at 328-29.

■ In the present case, the trial court erred in restricting plaintiffs' right to rebut the affirmative matters raised in Lestinsky's testimony. Lestinsky, defendants' only witness, denied that David ever reported a falling accident to her and recanted the tape-recorded statement she gave to David and his attorneys. Even more importantly, Lestinsky testified that David, accompanied by his attorneys Ken Lewis and Ann Louise Kleper, told her what to say on his behalf to corroborate the fact that he had been injured on the Days Inn property on February 19, 1991. Defense counsel obtained the following testimony from Lestinsky:

"Q. What did [plaintiff] say?

A. He said that he was there for compensation, something compensation that he got hurt and he said it really had nothing to do with the Days Inn, and he asked me if I would say if I gave him a band-aid on a tape.

Q. Did Mr. Lagestee talk to you before your voice was recorded?

A. Yes, he did.

Q. Did you feel pressured at all while you were giving that statement?

A. Yes, I did.

Q. Why is that?

A. Because I was nervous and I asked them if they could leave because my boss or somebody would come back and I didn't want to get in trouble, and I asked them to leave and they were just like give us a couple minutes, give us a couple minutes. They said, all you have to do is talk. So I really wanted them to leave.

Q. All they wanted to do was talk. And did they tell you what to say?

A. Yes. He told me about the band-aid. He said I didn't have to be specific about that he fell, just say he had a band-aid.

Q. When you say 'he,' you're talking about David Lagestee?

A. Right."

Based on a review of the above record, Lestinsky's testimony accused David of telling her what to say and made the same accusation against his attorneys. Therefore, as in *Flanagan* and *Pellico*, defendants raised an affirmative matter in support of their defense, specifically, whether David and his attorneys solicited Lestinsky to fabricate a statement. Similar to the plaintiffs in *Flanagan* and *Pellico*, plaintiffs here were entitled to present rebuttal testimony to explain, discredit, or impeach the defendants' evidence.

Furthermore, the trial court's failure to allow rebuttal testimony

prejudiced the plaintiffs and denied them a fair trial. The plaintiffs should have been given the opportunity in rebuttal to deny Lestinsky's serious allegations against David. Defendants' accusations not only went to the heart of plaintiffs' case on the issue of liability but directly impacted on David's credibility. The unrebutted testimony of Lestinsky improperly left the direct inference, through the court-imposed silence of David, Ken Lewis, and Ann Louise Kleper, that Lestinsky's claim about David obtaining a false statement from her was true. The prejudice was clear in this case because the accident was unwitnessed, the credibility of David was critical to the jury's decision, and the accusations were directly relevant to the issue of liability.

The trial court committed reversible error by denying the plaintiffs their right to call witnesses in rebuttal to dispute Lestinsky's serious allegations. Because the trial court excluded plaintiffs' rebuttal evidence, the case is reversed and remanded for a new trial in accordance with this opinion.

Since we are remanding for retrial, we will address plaintiffs' additional contention that the trial court erred in permitting evidence of David's smoking, prior injuries, prior accidents, and preexisting condition.

Prior to trial, plaintiffs moved *in limine* to preclude the defendants from introducing any collateral evidence of David's cigarette smoking, preexisting conditions, prior injuries, and prior accidents. Plaintiffs contended that defendants did not disclose or possess any medical opinion or other relevant evidence to demonstrate a causal connection between David's smoking, prior injuries, prior accidents and preexisting condition and the injuries David allegedly sustained in the instant action. The trial court denied the motions, and during the trial allowed defense counsel to cross-examine David's treating surgeon, Dr. Chuman, and retained expert witness, Dr. Treister, on David's smoking, prior injuries to his back, prior accidents, and preexisting spine condition. The trial court held that this evidence was relevant to future disability.

█ A prior injury or preexisting condition may be relevant to the issue of a plaintiff's damages in a personal injury action. *Wilson v. Granite City Steel Division of National Steel Corp.*, 226 Ill. App. 3d 96, 109, 589 N.E.2d 660 (1992). However, before this type of collateral evidence becomes relevant, the defendant must establish a causal connection between the evidence offered and the complained-of injury. *Karsten v. McCray*, 157 Ill. App. 3d 1, 8, 509 N.E.2d 1376 (1987); *Tate v. Coonce*, 97 Ill. App. 3d 145, 152, 421 N.E.2d 1385 (1981). The lack of an evidentiary link between a prior injury or a preexisting condition

and the injury complained of is highly prejudicial. Furthermore, evidence of causation cannot be based on mere possibilities or conjecture. *Karsten*, 157 Ill. App. 3d at 8.

Two recent cases have refined the type of proof the defendant is required to present on the issue of causation. In *Brown v. Baker*, 284 Ill. App. 3d 401, 672 N.E.2d 69 (1996), plaintiff's medical expert testified that plaintiff's motor vehicle accident with defendant caused plaintiff to sustain a herniated disk in his lower back. *Brown*, 284 Ill. App. 3d at 403. Over plaintiff's objection, defendant cross-examined plaintiff's treating physician on a prior back injury to plaintiff. Defendant never presented any medical testimony to demonstrate that this old injury was causally related to plaintiff's herniated disk. *Brown*, 284 Ill. App. 3d at 403.

The Fifth District Appellate Court reversed. The court noted that, in a personal injury action when the claimed injury is complex or could have been caused by an event other than the accident at issue, a plaintiff may need testimony from a physician to provide the necessary evidentiary causation link between the accident and the injury at issue. *Brown*, 284 Ill. App. 3d at 404. The *Brown* court further noted a defendant was historically only required to show that the prior injury affected the "same part of the body" for admissibility purposes and did not need to present relevant evidence causally linking the prior and present injuries. *Brown*, 284 Ill. App. 3d at 405. The *Brown* court rejected these different standards, holding "that the same standard applicable to the plaintiff on the issue of causation should also apply to the defendant. If a plaintiff would be required to present expert testimony, the defendant should also be required to do the same." *Brown*, 284 Ill. App. 3d at 405.

In *Cancio v. White*, 297 Ill. App. 3d 422, 697 N.E.2d 749 (1998), plaintiff claimed she sustained a herniated disk as a result of an auto accident with the defendant and presented expert medical testimony to support her claim. *Cancio*, 297 Ill. App. 3d at 429. Over plaintiff's objection, defendant was permitted to cross-examine plaintiff's expert on plaintiff's preexisting arthritic condition and degenerative change in her spine. Plaintiff's expert stated that the arthritic condition may have placed some extra pressure on plaintiff's disk but that the auto collision was in fact the cause of the disk herniation. *Cancio*, 297 Ill. App. 3d at 430. Defendant offered no medical testimony.

Relying on the *Brown* case, the First District Appellate Court concluded in *Cancio* that defendant failed to establish the necessary causal link between plaintiff's preexisting condition and her current injury. *Cancio*, 297 Ill. App. 3d at 430. The court concluded that the expert testimony at best demonstrated a "mere possibility" that the

preexisting condition was related to plaintiff's disk herniation and such testimony did not constitute sufficient medical or other relevant evidence on the issue of causation. *Cancio*, 297 Ill. App. 3d at 430. Absent competent and relevant evidence of a causal connection between the preexisting condition and the present injury, evidence of the preexisting condition is inadmissible. *Cancio*, 297 Ill. App. 3d at 430.

The fourth district, while recognizing the potential problems outlined by the *Brown* court concerning the "same part of the body rule," continues to follow that rule. *Bailey v. Wilson*, 299 Ill. App. 3d 297, 304, 700 N.E.2d 1113 (1998). The court stated "evidence of a prior injury may be admissible when defendant either establishes a causal connection between the current and prior injury or the injuries involve the same area of the body." (Emphasis omitted.) *Bailey*, 299 Ill. App. 3d at 304.

The *Bailey* court fails to address the inherent problems of the "same part of the body" rule but simply notes them. *Bailey*, 299 Ill. App. 3d at 303. As discussed in *Brown*, this older rule invites speculation and conjecture among the jury because all prior injuries to the same part of the body, including an older injury that "has long since healed and has shown no recurring symptoms," are admissible. *Brown*, 284 Ill. App. 3d at 405.

Moreover, *Brown* highlights the evidentiary problems of the "same part of the body" rule. *Brown*, 284 Ill. App. 3d at 404-05. The *Brown* court used the example of the relevancy of a childhood knee injury in a personal injury suit years later seeking damages to the same knee. Under the "same part of the body" rule, the childhood knee injury was admissible even if the injury had long since healed and produced no symptoms for decades. *Brown*, 284 Ill. App. 3d at 405. The defendant was not required to offer relevant evidence causally connecting the prior injury and the plaintiff's current condition, thereby inviting the jury to speculate on the exact relationship between the two injuries. *Brown*, 284 Ill. App. 3d at 405. This type of juror speculation "constitutes a violation of the very cautionary instructions given to every Illinois juror in civil cases." *Brown*, 284 Ill. App. 3d at 405. In order to avoid jury verdicts based on conjecture, the court in *Brown* concluded that, "[i]f a prior injury has long since healed and has shown no recurring symptoms, a defendant should not be permitted to introduce evidence of the prior injury without establishing causation." *Brown*, 284 Ill. App. 3d at 405.

After a careful review of *Brown* and *Cancio*, we hold that the defendant is required to present medical or other competent evidence of a causal or relevancy connection between plaintiff's prior injury, prior accident, or preexisting condition and the injury at issue as a prereq-

uisite of admissibility. *Brown*, 284 Ill. App. 3d at 405; *Cancio*, 297 Ill. App. 3d at 430.

Defendant may not always need to present medical expert testimony for admissibility purposes. The exact evidence defendant will need to produce to establish the relevancy or causal connection may for example depend on the nature, extent, duration and treatment of the prior injuries, prior accidents or preexisting condition and the injury for which plaintiff is seeking damages.

■ In the instant case, the trial court erred in allowing defendants to introduce evidence of David's childhood injury, smoking cigarettes, and prior injuries and accidents. However, evidence of David's preexisting degenerative disk disease was properly presented to the jury.

Plaintiffs' medical testimony established that David sustained an L5-S1 disk herniation as a direct result of a fall at the Days Inn Hotel. Both Dr. Chuman, David's treating physician, and Dr. Treister, David's retained expert, excluded any other trauma or accident as the cause of David's disk herniation.

Similar to the childhood injury scenario discussed in *Brown*, the trial court permitted defense counsel to cross-examine plaintiffs' medical expert witnesses on an alleged injury David sustained to his back while playing sports in high school. However, at the time of the accident in this case, David was 30 years old and testified that he experienced no symptoms from any prior injuries to his back. In addition, defense counsel produced no other evidence related to the alleged high school injury, which occurred approximately 15 years before David's fall and resulting disk herniation. The only evidence therefore in the record was that the high school back injury had long since healed and produced no symptoms for 15 years. The jurors were invited to speculate on the exact nexus between the childhood injury and the injury for which plaintiffs were seeking compensation in this case because defendants failed to produce any relevant evidence on causation between the childhood injury and the L5-S1 disk herniation. Specifically, Illinois jury instructions attempt to prevent jurors from engaging in precisely this type of speculation and require that each "verdict must be based on evidence and not upon speculation, guess or conjecture." Illinois Pattern Jury Instructions, Civil, No. 1.01(3) (3d ed. 1995). Therefore, evidence of David's childhood back injury was error and should not be admitted upon retrial, unless defendants can present evidence demonstrating a relevancy or causal link between David's childhood back injury and the L5-S1 disk herniation.

Regarding the collateral issue of David's smoking, Dr. Chuman testified that medical studies exist which state that smoking may cause premature disk deterioration in the lumbar spine, but he found

no causal connection between David's smoking and the L5-S1 herniated disk. Dr. Treister expressed the same opinion that David's smoking was not related to his disk herniation. Therefore, because defendants offered no relevant evidence of a causal connection between David's smoking and his L5-S1 disk herniation, the evidence of smoking was inadmissible. On retrial, defendants cannot raise David's smoking without presenting an evidentiary basis demonstrating a relevancy or causal link between David's smoking and the L5-S1 disk herniation.

In addition, the trial court allowed defendants to cross-examine Dr. Treister about two separate prior accidents and injuries to David's back: a fall off a loading dock in 1986 and a car accident in 1987. During his testimony, David testified that at the time of the accident at the Days Inn on February 19, 1991, his back was in good condition and he had no symptoms from any prior back injury. Dr. Treister confirmed that none of these prior injuries or accidents caused David's L5-S1 disk herniation. Dr. Treister testified that the 1986 injury had healed and was unrelated to David's L5-S1 disk herniation. Dr. Treister's records reflected the 1987 accident and injury, but, according to Dr. Treister, the symptoms from this past injury were unrelated to David's L5-S1 disk herniation. Therefore, Dr. Treister concluded that the trauma from David's fall was the only cause of David's L5-S1 disk herniation. Defendants presented no other relevant evidence to link the prior accidents and injuries with David's L5-S1 disk herniation. Consequently, the trial court erred in allowing defendants to cross-examine Dr. Treister about David's fall off a loading dock in 1986 and car accident in 1987. Such cross-examination should not be permitted upon retrial unless defendants can present evidence demonstrating the relevancy or causal link between the prior accidents and injuries and David's L5-S1 disk herniation.

Lastly, Dr. Treister testified that David had degenerative disk disease within his spine. Although Dr. Treister opined that trauma from a fall caused David's L5-S1 disk herniation, he additionally stated that David had some degree of degenerative disk disease, or he wouldn't have had the disk herniation. Therefore, Dr. Treister's testimony constituted sufficient relevant evidence that David's degenerative disk disease was causally related to the L5-S1 disk herniation. Cross-examination of Dr. Treister regarding the degenerative disk disease was properly allowed.

For the foregoing reasons, the judgment of the circuit court of

Cook County is reversed and remanded for a new trial consistent with this opinion.

Reversed and remanded.

TULLY and GALLAGHER, JJ., concur.