**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 220241-U

Order filed June 26, 2023

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| CATHY BEDOYA WILSON, | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| Plaintiff-Appellant, | ) | Du Page County, Illinois. |
| | ) | |
| v. | ) | Appeal No. 3-22-0241 |
| | ) | Circuit No. 19-L-1045 |
| CAITLYN R . SCOTT, | ) | |
| | ) | The Honorable |
| Defendant-Appellee. | ) | Robert W. Rohm, |
| | ) | Judge, Presiding. |

JUSTICE McDADE delivered the judgment of the court.
Justices Brennan and Peterson concurred in the judgment.

**ORDER**

¶ 1     *Held*: We uphold the jury verdict entered for the defendant in this personal injury case because the evidence adduced at trial did not support the giving of the second paragraph of revised Illinois civil IPI 15.01 addressing sole proximate cause and the jury's verdict was not against the manifest weight of the evidence, manifestly inadequate or unfair. In addition, the plaintiff failed to surmount the high bar required to merit the entry of judgment notwithstanding the verdict.

¶ 2     The plaintiff, Cathy Bedoya Wilson, and the defendant, Caitlyn R. Scott, were involved

in a car accident that Wilson alleged aggravated her preexisting injuries. Wilson filed a personal

injury complaint against Scott, who admitted that her negligence caused the accident but denied that Wilson's alleged damages were caused by the collision. At trial, the court declined Wilson's request that the jury be given the long form of the revised jury instruction on proximate cause, and the jury returned a verdict for defendant Scott. After her posttrial motion was denied, Wilson filed a timely notice of appeal, challenging the propriety of the jury instruction on proximate cause and asserting that the jury's verdict did not comport with the evidence adduced at trial. Based on our review of the trial record, we affirm the verdict.

¶ 3                                                I. BACKGROUND

¶ 4         In September 2019, Wilson filed a tort complaint against Scott in the Du Page County circuit court. The complaint alleged that Wilson suffered personal and pecuniary injuries as the result of a car accident in Downers Grove, Illinois, on September 20, 2017, when Scott made a negligent left turn into her vehicle. At the time of the accident, Wilson was 75 years old. In Scott's amended answer, she admitted liability in causing the accident but disputed the claim that her negligence was the direct and proximate cause of Wilson's alleged injuries.

¶ 5         Although Wilson declined hospital treatment immediately after the accident, she went to the emergency room later that evening. When called to testify in Wilson's case-in-chief, Scott described the collision as a "very hard" impact that caused both airbags to deploy in her car and her windshield to crack. She admitted that both cars were rendered undriveable and had to be towed from the scene. When defense counsel later recalled Scott to testify, she recounted Wilson being visibly upset after the accident, pacing and pointing her finger. Scott stated that Wilson never indicated that she was injured at the scene of the accident.

¶ 6         Wilson's primary care physician, Dr. Umang Patel, also testified. Wilson had been his patient since at least 2004. Dr. Patel testified that when he saw Wilson on October 13, 2017, she

2

told him she had been in a car accident and was experiencing headaches on both sides of her head, as well as severe neck and back pain. He observed muscle tenderness in her neck, back, and shoulders, tightness in her neck, upper and lower back muscles, straightening of her cervical spine that indicated spasms in her neck muscles, and tender trapezius muscles on both sides. In his opinion, the accident caused Wilson to suffer a concussion, and a sprain of her neck, thoracic spine, and lumbar spine. He believed that the trauma from the accident could have caused pain by aggravating Wilson's age-related degenerative disc disease. In December, Wilson was seen by one of Dr. Patel's partners, who noted that she continued to suffer from headaches and to have severe neck and back pain.

¶ 7        Dr. Patel testified that prior to the accident in June 2017, Wilson reported joint pain, and pain in her shoulder and chest wall, back, and neck due to a fall from her bed in July 2016. After that fall, she reported lower back pain that extended down her left leg when sitting and standing, as well as tingling in her leg. She also reported pain on the left side of her neck, head, and back that radiated into her left arm during the two months preceding her June 2017 appointment. She was unable to sleep on her left side and could not turn her head, lift groceries, or read at that time. Dr. Patel diagnosed her with non-severe cervical radicular pain and lumbar radicular pain and referred her to physical therapy that began in mid-August 2017; her last physical therapy session was August 31.

¶ 8        After the collision the following month, Dr. Patel again referred Wilson to physical therapy for treatment of her low back pain, trouble walking and other gait abnormalities, and sprains of the ligaments on her cervical, thoracic, and lumbar spine. That treatment began on October 23 and ended on January 2, 2018. Dr. Patel concluded that to a reasonable degree of

3

medical certainty, the car accident caused Wilson's back and neck pain to worsen and also caused her headaches, concussion, and neck and back pain.

¶ 9        Wilson's physical therapist testified that her complaints before and after the car accident differed. Before the accident, she had pain in the left side of her neck, head, and upper back that radiated down her left arm. After the collision, she reported neck and back pain, bilateral shoulder pain, pain when sitting, standing, and bending over. She also stated that she could not lay on her back and had pain whenever she moved her neck. During her last physical therapy session after the car accident, Wilson showed improvement but still experienced pain in her right upper back and right lateral side, and tightness in various muscles located in her neck and upper back. She demonstrated reduced mobility in her lower back and pelvis, especially on the right side, decreased cervical and lumbar extension, and other deviations in her pelvis and upper trunk. Wilson was again referred for physical therapy that began on August 10, 2020, and ended on October 19. At that time, she attributed her need for therapy to the car accident, not to her 2016 fall out of bed.

¶ 10        Wilson's daughter, Katherine Craff, testified about her mother's activity level before and after the collision. She stated that prior to the crash, they went shopping together and that her mother was very active. After Wilson's husband unexpectedly passed away from a stroke a week after her car accident, Katherine stayed with Wilson for the next year. During that time, Wilson complained of pain throughout her body, trouble sleeping, and difficulties with bending, sitting, and prolonged standing. In the month after the car accident, Katherine noticed a reduction in her mother's activity level. Wilson did not do as much gardening due to pain while bending, and she suffered from headaches and back pain. Craff reported that Wilson's pain continued at the time of trial and that Wilson took Tylenol to sleep. Her energy level and interest in activities she had

4

previously enjoyed, such as gardening, cooking, and cleaning, diminished, which frustrated Wilson.

¶ 11        Another of Wilson's adult children, Leslie Covarrubias, testified that she and Wilson often went shopping, attended parties, gardened, and worked on projects, such as installing mosaic tile on a patio, before the car accident. Wilson had also previously vacationed at Leslie's Michigan cottage with her. Overall, Wilson was very active and energetic in 2016. After falling out of bed that year, Wilson took Tylenol for some soreness but did not stop participating in activities she had always enjoyed. Her soreness and pain continued into August 2017, a month before the accident.

¶ 12        After the car accident, Wilson called Leslie and asked to be picked up because her car could not be driven. Leslie noticed that her mother was not herself and seemed a little confused. Before Wilson's car was towed, Leslie helped her transfer items into Leslie's vehicle. Leslie then drove her mother home and returned to work. After work, she visited Wilson, who was in pain, with strong headaches, neck pain, body aches, and dizziness. Because Leslie thought that her mother was not acting like herself, she took Wilson to the emergency room, where they were told she had a concussion.

¶ 13        Subsequently, Wilson did not cook as much and had to hire someone to help with her gardening. Because long car rides hurt Wilson's back and caused her legs to become numb, she did not go to Leslie's Michigan cottage very often after the collision. At the time of trial, Wilson reported pain in her sacrum and neck and was unable to lift her arm high or to put it behind her back. Due to those limitations, Wilson had trouble showering and dressing and was unable to do activities she had normally done, making her life more difficult.

¶ 14 Wilson's sister, Consuelo Bedoya-Witt, also testified, stating that she visited Wilson the day after the accident and observed her in a great deal of pain in her neck and shoulder. After Wilson's husband suffered a stroke, Wilson cared for him despite being in pain. Prior to the collision, Consuelo saw her sister two to three times each week. She stated that Wilson had always been extremely active before the collision and maintained beautiful vegetable and flower gardens, activities she could not do after the accident. At the time of trial, Wilson had limited movement and was afraid of falling and driving.

¶ 15 Wilson took the stand and testified that she was injured when she fell out of bed in July 2016, hurting her head and neck and causing general pain in her body. She was still able to perform her usual activities, cooking, cleaning, and gardening, however, and would take Tylenol when needed for pain. Due to her injuries, Wilson was in physical therapy a month before the car crash.

¶ 16 Wilson described the impact during the collision as "hard," alternately pushing her body left and right against her seatbelt. Because her car could not be driven, she called her daughter Leslie to take her home. Once at home, Wilson began to have significant pain in her neck, shoulders, and back, and her entire body hurt. She started to have a bad headache and felt dizzy, with nausea and blurred vision. Due to those symptoms, Leslie took her to the emergency room that night, where she underwent a CT scan, was told that she had a concussion, and was given Tylenol for pain. She described the pain as different from what she experienced after falling out of bed the year before. Her post-accident pain was worse, requiring her to take strong Tylenol, which made her sleepy. After the crash, she had worse pain in her shoulder, neck, and on the back of her head and felt disabled. She disliked losing her former independence and needing to depend on others for help. She described standing as being "bad" and causing tingling down her

6

leg and a "sore behind." She also experienced more soreness in her head and shoulder after the collision and could no longer move around as she had previously done.

¶ 17         During the jury instruction conference, Wilson's counsel offered the long form of civil instruction No. 15.01 on proximate causation (Illinois Pattern Jury Instructions, Civil, No. 15.01 (approved August 2021) (hereinafter IPI Civil (2021) No. 15.01)). Scott objected to the long form, arguing that the committee comments made "it clear that the second paragraph should only be used when there is evidence tending to show the conduct of the defendant was not the proximate cause of the occurrence. And the conduct of third persons or outside instrumentalities was the proximate cause of the occurrence." Because no third parties were at issue, defense counsel argued that the second paragraph of the instruction should be omitted. The trial court agreed and gave the jury only the first paragraph of IPI Civil (2021) No. 15.01.

¶ 18         During closing arguments, Wilson's counsel requested damages of $80,000, and Scott's counsel argued that her negligence was not the proximate cause of Wilson's injuries. After the jury returned a verdict for Scott, Wilson filed a posttrial motion asking the trial court to vacate the judgment and hold a new trial on the issue of damages because the verdict was against the manifest weight of the evidence and manifestly erroneous. Alternatively, she requested judgment notwithstanding the verdict (judgment *n.o.v.*), contending that the evidence and the reasonable inferences from it so overwhelmingly favored Wilson that no contrary verdict could stand, even when viewed in a light most favorable to Scott. *Steed v. Rezin Orthopedics & Sports Medicine*, 2021 IL 125150. Wilson also asserted that the trial court erred by denying her request for the long form of IPI Civil (2021) No. 15.01. The trial court denied the motion, and Wilson filed a timely notice of appeal.

¶ 19                                    II. ANALYSIS

7

¶ 20    Wilson raises four issues on appeal: (1) whether the trial court erred by failing to give the jury the long form of the proximate cause instruction that was proffered by Wilson; (2) whether the verdict for Scott was against the manifest weight of the evidence; (3) whether Wilson's posttrial request for judgment *n.o.v.* should have been granted; and (4) whether the verdict was manifestly inadequate or unfair. We turn first to the issue of whether it was error to give the jury the short form of IPI Civil (2021) No. 15.01 on proximate cause. To be clear, the parties' arguments on proximate cause address only the question of whether Wilson satisfied her burden of proving that Scott's negligence was the proximate cause of Wilson's enhanced injuries. Because Scott admitted that her negligence was the proximate cause of the collision, that issue was not before the jury at trial and is not an issue currently pending before this court.

¶ 21                               A. IPI Civil (2021) No. 15.01

¶ 22    The trial court has discretion to determine whether a requested civil jury instruction may be properly given. Consequently, we review that determine for an abuse of the court's discretion. *Hobart v. Shin*, 185 Ill. 2d 283, 294 (1998). To be given to the jury, a proffered instruction must be supported by some evidence, however slight, insubstantial, or unpersuasive. *Heastie v. Roberts*, 226 Ill. 2d 515, 543 (2007). On appeal, we consider whether, when read as a whole, the jury instructions both fairly and correctly state the applicable law and are not misleading. *Dillon v. Evanston Hospital*, 199 Ill. 2d 483, 505 (2002).

¶ 23    Here, Wilson requested that the jurors receive the long form of IPI Civil (2021) No. 15.01, an instruction that combines the previous version of IPI Civil (2021) No. 15.01 with the proximate cause instructions formerly found in civil jury instructions Nos. 12.04 and 12.05 (Illinois Pattern Jury Instructions, Civil, Nos. 12.04, 12.05 (2000) (hereinafter IPI Civil (2000)

Nos. 12.04 and 12.05)). After being merged into revised IPI Civil (2021) No. 15.01 in August 2021, IPI Civil (2000) Nos. 12.04 and 12.05 were withdrawn from use.

¶ 24    As applicable here, the long form of IPI Civil (2021) No. 15.01 states:

"15.01 Proximate Cause—Definition and Use

When I use the expression 'proximate cause,' I mean a cause that, in the natural or ordinary course of events, produced the plaintiff's injury. It need not be the only cause, nor the last or nearest cause. It is sufficient if it combines with another cause resulting in the injury.

If you decide that the defendant was negligent and that her negligence was a proximate cause of injury to the plaintiff, it is not a defense that something else may also have been a cause of the injury. However, if you decide that the defendant's conduct was not a proximate cause of the plaintiff's injury, then your verdict should be for the defendant." IPI Civil (2021) No. 15.01.

At trial, Scott objected to Wilson's request for the long form of the instruction, arguing that it was inapplicable under the relevant facts and arguments. The trial court agreed, concluding that the second paragraph of the instruction explained the principle of sole proximate causation, an issue that was "not even an argument" in the case.

¶ 25    Instead, the trial court instructed the jury that Wilson "claims that she was injured and sustained damages. The defendant denies both that any claimed act or omission on her part was a proximate cause of her claimed injuries" and "that the plaintiff was injured or sustained damages to the extent claimed." The jury received the following explanation of "proximate cause":

9

"[w]hen I use the expression 'proximate cause,' I mean in the–that cause which in the natural or ordinary course of events produced the plaintiff's injury. It need not be the only cause, nor the last or nearest cause. *** It is sufficient if it combines with another cause resulting in the injury."

¶ 26     Finally, the jurors were told that:

"The plaintiff has the burden of proving each of the following propositions: First, that she was injured. Second, that the negligence of the defendant was a proximate cause of the injury to the plaintiff. If you find from your consideration of all the evidence that each of these propositions has been proved, then your verdict shall be for the plaintiff.

On the other hand, if you find from your consideration of all the evidence that any of these propositions has not been proved, then your verdict shall be for the defendant.

Again, the defendant admits that she was negligent. You need only decide whether that negligence was a proximate cause of injuries to the plaintiff. And if so, what amount of money will reasonably and fairly compensate the plaintiff for those injuries."

¶ 27     Before this court, Scott repeats her claim that the second paragraph of IPI Civil (2021) No. 15.01 is inapplicable, maintaining that it is used only "when there are potential joint tortfeasors and at the time of trial only one tortfeasor is a defendant. This scenario arises when there are multiple defendants and prior to trial a settlement is reached with all but one defendant." Because the instant case involves only one alleged tortfeasor, Scott claims that the trial court properly declined to give the second paragraph of the instruction. She notes that the

10

sole issue at trial "was whether the accident aggravated a pre-existing condition," a matter that did not involve "a non-party who was potentially at fault."

¶ 28 Revised IPI Civil (2021) No. 15.01 was adopted in August 2021, leading to a paucity of decisions interpreting it. The most recent "Notes on Use" and Committee Comments to the instruction, however, provide critical guidance for us on its intent and usage. As the Notes state:

> "This instruction in its entirety should be used when there is evidence of a concurring or contributing cause to the injury or death. *** *The second paragraph should be used only where* there is evidence tending to show that the conduct of the defendant[s] *was not a proximate cause of the occurrence and the conduct of third persons or outside instrumentalities was the proximate cause of the occurrence*." (Emphases added.) IPI Civil (2021) No. 15.01 (Notes on Use, revised October 2021).

¶ 29 The Committee Comments also address the proper application of the second paragraph of revised IPI 15.01, stating:

> "The second paragraph in this instruction merges the concepts previously conveyed in IPI 12.04 and 12.05 and combines those concepts into one proximate cause instruction because 'Nomenclature aside, the sole proximate cause theory is simply one way a defendant argues that the plaintiff failed to carry its burden of proof on proximate cause – specifically, by arguing that the negligence of another person or entity, not a party to the lawsuit, was *the only proximate cause of the plaintiff's injuries*.' *Douglas v. Arlington Park Racecourse, LLC*, 2018 IL App (1st) 162962, ¶ 36. As such, 'sole proximate cause' is not an affirmative

11

defense. *Leonardi v. Loyola University*, 168 Ill. 2d 83, 101 (1995). Ultimately, the jury is charged with discerning whether plaintiff has carried its burden, not whether the defense has negated said proof.

The second paragraph in this instruction instructs the jury that '[w]here a person is guilty of the negligence charged against him, it is no defense that some other person, or thing, contributed to bring about *the results for which the damages are claimed*.' [Citations.]" (Emphases added.) IPI Civil (2021) No. 15.01 (Comments, revised October 2021) (citing cases).

¶ 30 In applying these guidelines, we recognize the distinction they draw between references to the "occurrence," as discussed in the Notes, and the "injury" or "results for which the damages are claimed," as discussed in the Comments. In her complaint, Wilson alleged that Scott's negligence caused the collision that resulted in her "sustain[ing] injuries of a personal and pecuniary nature." Here, the "occurrence" was undoubtedly the collision between the parties' vehicles, for which Scott admits responsibility. Wilson's complaint also broadly alleged the "injury" or "results for which the damages are claimed" as her personal and pecuniary injuries. At trial, Wilson offered evidence that she now alleges established the personal injuries she incurred consisted of headaches and enhanced neck and back pain, resulting in a loss of her normal life.

¶ 31 Substituting those allegations into the Notes of Use and Comments yields the following:

"This instruction in its entirety should be used when there is evidence of *a concurring or contributing cause to the* [*headaches and enhanced neck and back pain Wilson alleged*]. *** *The second paragraph*

12

*should be used only where* there is evidence tending to show that the conduct of [Scott] *was not a proximate cause of the* [*collision*] and the conduct of third persons or outside instrumentalities *was the proximate cause of the* [*collision*]." (Emphases added.) See IPI Civil (2021) No. 15.01 (Notes on Use, revised October 2021).

Moreover, the relevant Comment would read:

"The second paragraph in this instruction merges the concepts previously conveyed in IPI 12.04 and 12.05 and combines those concepts into one proximate cause instruction because 'Nomenclature aside, the sole proximate cause theory is simply one way a defendant argues that the plaintiff failed to carry its burden of proof on proximate cause – specifically, by arguing that the negligence of another person or entity, not a party to the lawsuit, was the only proximate cause of *the* [*headaches and enhanced neck and back pain Wilson alleged*].' \*\*\*

*The second paragraph in this instruction instructs* the jury that '[w]here a person is guilty of the negligence charged against him, *it is no defense that some other person, or thing, contributed to bring about the* [*headaches and enhanced neck and back pain Wilson alleged*].' \*\*\*." (Emphases added.) See IPI Civil (2021) No. 15.01 (Comments, revised October 2021) (citing cases).

¶ 32            Applying the Notes to the facts of the instant case, giving the long form of revised IPI 15.01 was permissible if the evidence showed that Wilson's alleged injuries were due to "a concurring or contributing cause" outside of Scott's admitted negligence. Moreover, the crucial

13

second paragraph of that instruction is used "*only*" if "there is evidence tending to show that the conduct of [Scott] *was not a proximate cause of the* [*collision*] and the conduct of third persons or outside instrumentalities *was the proximate cause of the* [*collision*]." Because nothing in the evidentiary record suggests that a factor outside of Scott's negligence concurrently caused or contributed to the alleged aggravation of Wilson's preexisting conditions or tends to show that a third party was the sole proximate cause of the collision, the Notes on Use supports the trial court's denial of the long form of IPI Civil (2021) No. 15.01.

¶ 33    In our view, the relevant Committee Comments also support the denial of the long form of that instruction. As those Comments apply here, giving the second paragraph of IPI Civil (2021) No. 15.01 was permissible only if Scott had argued " 'that some other person, or thing, contributed to bring about the' " aggravated injuries alleged by Wilson. See IPI Civil (2021) No. 15.01 (Comments, revised October 2021) (citing cases). Scott never argued, however, that a third party's conduct caused the aggravation of Wilson's preexisting injuries. Instead, she argued that Wilson failed to sustain her burden of proving that she suffered any aggravation of her pre-existing injuries after the collision.

¶ 34    After applying the guidance offered by the relevant Notes of Use and Committee Comments, we hold that the facts and parties' argument did not support Wilson's request for the long form of IPI Civil (2021) No. 15.01. We affirm the trial court's refusal to give the jury that instruction.

¶ 35                          B. The Manifest Weight of the Evidence

¶ 36    Wilson next challenges the propriety of the jury's verdict for Scott, arguing that it was against the manifest weight of the evidence. In reviewing that challenge, we must consider

14

whether the opposite conclusion is clearly evident or the jury's verdict is unreasonable, arbitrary, and not rooted in the trial evidence. *Maple v. Gustafson*, 151 Ill. 2d 445, 454 (1992).

¶ 37    Here, Scott admitted liability for the collision by acknowledging that her negligence caused the accident. She denied, however, that her negligence was the proximate cause of Wilson's injuries and damages. Because Wilson maintained at trial that the collision aggravated her preexisting injuries, the jury was given Illinois civil jury instruction 30.21 (Illinois Pattern Jury Instructions, Civil, No. 30.21 (2000) (hereinafter IPI Civil (2000) No. 30.21), addressing the aggravation of preexisting conditions. That instruction states:

> "If you decide for the plaintiff on the question of liability, you may not deny or limit the plaintiff's right to damages resulting from this occurrence because any injury resulted from an aggravation of a pre-existing condition or a pre-existing condition which rendered the plaintiff more susceptible to injury." IPI Civil (2000) No. 30.21.

¶ 38    Wilson now argues that, by submitting a verdict for Scott, the jurors ignored both that instruction and the objective evidence of her injuries presented at trial. She specifically cites only Dr. Patel's testimony that she suffered from neck spasms, as indicated by the straightening of her cervical spine, and a concussion due to the collision.

¶ 39    When examining the sufficiency of the evidence, our review is necessarily limited. The jury alone is tasked with resolving evidentiary conflicts, assessing the witnesses' credibility, and weighing the evidence admitted at trial. Accordingly, a reviewing court "should not usurp the function of the jury and substitute its judgment on questions of fact fairly submitted, tried, and determined from the evidence which did not greatly preponderate either way." *Maple*, 151 Ill. 2d at 452-53.

15

¶ 40        Here, the evidence admitted at trial shows significant overlap between the injuries underlying the need for Wilson's physical therapy sessions in August 2017, a month before the car accident, and the sessions she undertook a month after that accident. In both instances, Wilson suffered various types of neck, shoulder, and back pain. Her focus at trial was on how the collision aggravated the preexisting conditions she had suffered due to her 2016 fall from bed. During closing arguments, Wilson's counsel explained to the jury how the collision was the proximate cause of those enhanced injuries by analogizing to a procession of dominos:

> "So the cause of the fall of the third domino is the second domino. The cause of the fall of the second domino, is the first domino. The cause of the fall with the first domino is the push of the finger. Proximate cause.
>
> What do we have. We have a person who is susceptible to injury or already has an existing injury and then the crash comes along, the finger, and pushes that. It pushes a previously injured person and then it pushes a back injury and it pushes a neck injury, and it pushes a shoulder injury. It is the proximate cause."

¶ 41        Wilson's closing argument also emphasized the jury instruction on the aggravation of preexisting conditions, reiterating that "[i]f you decide for the plaintiff on the question of liability, you may not deny or limit the plaintiff's right to damages resulting from the occurrence because any injury resulted from an aggravation of a pre-existing condition or a pre-existing condition which rendered the plaintiff more susceptible to injury." Wilson's counsel then reminded the jurors of Dr. Patel's testimony on direct examination that stated the car accident caused Wilson to suffer headache, a concussion, neck pain, and back pain. Counsel recounted how those injuries resulted in Wilson returning to physical therapy, adding that "going through

16

physical therapy is not a pleasant thing." Counsel asserted that Wilson's normal life has been disrupted as a result of the accident and that she must now live with a permanently reduced level of activity.

¶ 42       For her part, Scott's closing argument emphasized the similarities between Wilson's pre- and post-accident injuries, citing notations in Wilson's physical therapy records showing that both before and after the collision, her

> "pain level is the same exact number, 8 out of 10. This is before the
> accident and this is after the accident. That is the baseline. There is no
> aggravation. *** By the time she got to the therapist in October 2017,
> after this accident, her disability index numbers went down. And what do
> we know about that? The lower the number, the better she is."

¶ 43       After summarizing the evidence elicited about Wilson's personality and level of activity, Scott's counsel also asserted that her "[l]ife did not change because of this accident. She is too independent, too active for anything she would allow for that to change." Defense counsel also recounted Dr. Patel's testimony on cross-examination that he had never placed any restrictions on Wilson or her physical activities. Counsel reminded the jury of Dr. Patel's statement that he could not "say or connect the accident to the complaint [Wilson] came to see me in 2020. What does that mean? That means that the physical therapy that she went back to in 2020 Dr. Patel can't connect, either. And that is part of the proximate cause issue, the aggravation issue."

¶ 44       Finally, near the end of her closing argument, Scott's counsel recapped Wilson's burden of proof to demonstrate proximate cause:

> "As I told you early in the beginning of this trial, the plaintiff has
> the burden of proof to prove two things and both of those things. If he fails

17

to prove one of them, you need to return a verdict in favor of the defendant.

Now, I will repeat that. If the plaintiff fails to prove one of the elements, you must return a verdict for the defendant.

He has to prove that his client was negligent—or was injured. And the last part, he has to prove that that injury resulted [from] defendant's negligence, okay? And that is where the proximate cause issue discussion comes.

So keep that in mind when you're looking at the totality of the evidence here from the witness stand and the video depositions that we presented to you."

Scott reiterated that the jurors "do not get to the aggravation issue until you resolve the proximate cause issue."

¶ 45    The jury was undoubtedly entitled to weigh the evidence and the reasonable inferences that flowed from it, as well as the credibility of the witnesses. *Maple*, 151 Ill. 2d at 452-53. Contrary to Wilson's assertion that the verdict in favor of Scott was necessarily due to the jury ignoring the evidence establishing that the accident had exacerbated her preexisting injuries, its verdict could also be supported by the conclusion that Wilson had failed to satisfy her burden of proving proximate cause. The latter possibility is particularly crucial here because both parties emphasized the importance of proximate cause to the jury.

¶ 46    After reviewing the evidence adduced at trial as well as the parties' arguments, we cannot say that the verdict for Scott is either unreasonable, arbitrary, or not based on the evidence or that the opposite verdict is clearly evident. See *Maple*,151 Ill. 2d 445, 454 (1992)

18

(explaining the manifest weight standard of review). We are not entitled to usurp the jury's province of assessing the credibility of the witnesses, resolving evidentiary conflicts, and weighing the evidence by substituting our own judgment. *Maple*, 151 Ill. 2d at 452. Accordingly, we are not persuaded by Wilson's claim that the verdict for Scott was against the manifest weight of the evidence.

¶ 47                                    C. Judgment *N.O.V.*

¶ 48        Next, Wilson argues that the trial court should have granted her posttrial motion for judgment *n.o.v.* because "[t]he evidence and inferences, when viewed in a light most favorable to the defendant, so overwhelmingly favor the plaintiff that no contrary verdict could ever stand," citing *Steed*, 2021 IL 125150. Wilson contends that she had met her burden of proving that Scott's negligence was both the legal cause and the cause-in-fact of the car crash that resulted in her injuries and that the jury improperly ignored Dr. Patel's testimony about the scope of those injuries. Thus, the trial court erred by denying her motion for judgment *n.o.v.*

¶ 49        Having already concluded that the verdict for Scott was not against the manifest weight of the evidence and could be properly premised on the jurors' rejection of Wilson's claim that her injuries were proximately caused by the car accident, we must also reject this argument. Because Scott prevailed with the jury, we must view the trial evidence in the light most favorable to Scott. Viewed in that light, the evidence did not so overwhelmingly favor Wilson that no verdict for Scott could ever stand.

¶ 50                        D. Manifestly Inadequate or Unfair Verdict

¶ 51        Finally, Wilson asserts that because the evidence of her pain and disability from the collision was unrebutted and uncontroverted, the jury improperly ignored the proof of her damages and incorrectly applied the law on proximate cause, resulting in a manifestly inadequate

19

and unfair verdict. In support, she relies primarily on three Illinois appellate cases, *Obszanski v. Foster Wheeler Construction, Inc.*, 328 Ill. App. 3d 550 (2002); *Torres v. Irving Press, Inc.*, 303 Ill. App. 3d 151 (1999); and *Blevins v. Inland Steel Co.*, 180 Ill. App. 3d 286 (1989).

¶ 52    In *Obszanski.*, 328 Ill. App. 3d at 552, the jury awarded the plaintiff damages for present and future pain and suffering, as well as for medical expenses and lost earnings, but denied damages for the plaintiff's alleged disability. The appellate court reversed, reasoning that the evidence of the plaintiff's disability and present and future pain and suffering was uncontroverted, making the jury's failure to award any damages for disability contrary to the manifest weight of the evidence. The court noted that a new trial may be granted if a damage award is manifestly inadequate or bears no relationship to the loss suffered, or if it ignores damages that were proven at trial. *Id.* at 554-55.

¶ 53    Similarly, in *Torres*, 303 Ill. App. 3d at 152, the plaintiff was awarded $405,000 in damages for pain and suffering, medical expenses, and lost wages for both the past and the future but was not awarded damages for loss of a normal life. On appeal, the appellate court held that the jury ignored unrebutted evidence of the plaintiff's loss of normal life. Accordingly, the denial of the plaintiff's posttrial motion asserting that error was an abuse of the trial court's discretion, and the appellate court reversed and remanded the cause for a new trial. *Id.* at 161-62.

¶ 54    The appellate court in *Blevins*, 180 Ill. App. 3d at 291, also reversed a verdict and remanded the cause for a new trial on damages after it found that no competent evidence was offered to rebut the plaintiff's calculation of his lost wages. "[H]ence, the jury was not free to disregard its instruction to consider all elements of damages." *Id.*

¶ 55    After reviewing those decisions, we conclude that they are factually distinguishable from this case. In each case, the jury awarded at least some damages to the plaintiff, implicitly

20

signaling its conclusion that the plaintiff's damages had been proximately caused by the defendant. Here, however, the jury did not award any damages to Wilson and, instead, rendered a verdict for Scott. That verdict is fully consistent with a jury finding that Scott did not proximately cause Wilson's alleged damages. Because Wilson failed to establish proximate cause between her claimed damages and Scott's negligence, the jury was barred from awarding Wilson any damages. Thus, unlike the appellate decisions cited by Wilson, this is not a case in which the jury appeared to selectively ignore elements of the plaintiff's alleged damages. Here, the jury's verdict supports the conclusion that the jury did not believe that Scott was legally responsible for any of Wilson's alleged damages. Thus, we reject Wilson's reliance argument that the verdict was manifestly inadequate or unfair.

¶ 56                                    III. CONCLUSION

¶ 57        For the reasons stated, we affirm the judgment of the circuit court of Du Page County.

¶ 58        Affirmed.